461 So.2d 341 (1984)
FIRST FEDERAL SAVINGS & LOAN OF NATCHITOCHES, Appellant,
v.
AMERICAN BANK & TRUST COMPANY, COUSHATTA, Louisiana, Appellee.
No. 16629-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
*343 Gahagan & Gahagan by Marvin F. Gahagan, Natchitoches, for appellant.
Horton & Jones by William R. Jones, Coushatta, for appellee.
Before HALL, SEXTON and NORRIS, JJ.
NORRIS, Judge.
In this breach of contract suit, plaintiff-appellant, First Federal Savings & Loan Association of Natchitoches, Louisiana, hereinafter referred to as "First Federal," appeals a lower court decision in favor of defendant-appellee, American Bank & Trust Co., Coushatta, Louisiana, hereinafter called "American Bank," concluding that there was no contractual agreement between the parties and rejecting appellant's demands for damages and attorney's fees. The basic issues involved are whether the parties actually reached a meeting of the minds and, if so, whether there was "cause" for American Bank to enter into the agreement. For the reasons hereinafter expressed, we reverse the lower court and render judgment in favor of plaintiff-appellant.

FACTS
First Federal filed foreclosure proceedings against a mortgagor in Red River Parish. The suit affected two contiguous tracts and their respective improvements, a house and a barn. First Federal held a first mortgage on the tract with the house; American Bank held a collateral first mortgage of record, in the face amount of $55,000 on the "barn" lot. The foreclosure suit covered the barn property, on which First Federal held a second mortgage. The American Bank debt which was secured by a first mortgage on the barn property was 90% guaranteed by the Small Business Administration. The sheriff's sale provoked by First Federal's foreclosure proceedings was set for September 17, 1980.
At some point prior to the sheriff's sale, First Federal found a buyer interested in buying both the house and barn properties for a price of $180,000, provided he could get them together. He was not interested in buying one of the properties without the other. Because First Federal could not assure the buyer of getting the barn property, it arranged a meeting between its representatives and American Bank's attorney the day before the sheriff's sale. The purpose of the meeting was to try to negotiate a satisfactory bid price whereby First Federal or its prospective buyer would be willing to purchase the barn property at the sheriff's sale.
Robert G. Martin, President and managing officer of First Federal and the attorney, Marvin Gahagan, represented First Federal. Another attorney, Donald G. Horton, as legal counsel for American Bank, represented the bank.
At trial, Martin's deposition was introduced into evidence. Martin recalled the meeting and its purpose as stated above. He was aware that American Bank's loan, secured by the $55,000 mortgage, was an SBA loan but had no knowledge that the SBA had already honored its guarantee to American Bank. Martin also recalled that before this meeting, Attorney Horton had been requested to contact the sheriff about decreasing the percentage of the sheriff's sale commission. Martin testified, however, that the main purpose of the meeting the day before the sale was to determine the amount American Bank would have to receive in order to satisfy the first mortgage. Martin testified specifically that Horton informed Gahagan and Martin that *344 American Bank agreed to accept $55,000 as satisfaction of the first mortgage indebtedness. Martin also understood that American Bank still held the note that the mortgage secured. Based on this representation, Martin stated that First Federal was prepared to bid $60,000 for the barn property and its prospective buyer was prepared to bid $60,001.00. According to Martin, the agreement reached at the meeting was that $55,000 of the bid proceeds would go to American Bank, the various court costs and commissions in connection with the sale would be deducted, and First Federal would then receive the balance to minimize its loss on its second mortgage. Without a satisfactory agreement, Martin stated that First Federal would have negotiated differently with the prospective buyer or would not have bothered to bid on the barn property at all. Instead, they would have allowed the bank simply to bid the property in.
Donald G. Horton's deposition was also introduced into evidence. Horton recalled the meeting with Gahagan and Martin but could not remember where the meeting took place. Horton recalled that the parties did talk about how much money the bank would take to satisfy the first mortgage. However, he stated he could not remember whether he told Gahagan and Martin the bank would take $55,000 specifically or that it wanted to be paid off on its first mortgage. Horton emphasized that he was authorized to speak for the bank at the meeting. He also testified that he did not tell Gahagan or Martin that they were negotiating with the wrong institution and should be talking with the SBA. Horton testified he "wouldn't quarrel" with Martin's recollection of the terms of the agreement because he simply did not remember what the agreement was. Horton also admitted that after he learned how the sale proceeds were actually distributed he discussed the matter with Keith Hayes, President of American Bank, who informed him that the bank wanted all the money it could get and was not going to give First Federal any money unless someone made him do so.
Keith Hayes, President of American Bank, was the only witness to testify before the trial judge. Hayes was not present at the meeting between Horton, Gahagan and Martin and did not testify concerning his understanding of what transpired at that meeting. Hayes never denied Horton was authorized to represent the bank at that meeting.
Hayes testified that American Bank made a $55,000 loan to Jimmy Long on July 31, 1978 and that 90% of that loan was guaranteed by the Small Business Administration. The loan was evidenced by a note and secured by the mortgage in question. When Long became delinquent on the loan, Hayes wrote to the SBA asking it to pay its guaranteed portion, and it did so on July 1, 1980, in the amount of $52,138.22. Of that amount, American Bank applied $49,012.84 to principal and $3,125.38 to interest, leaving a balance due American Bank of $6,069.99. American Bank then assigned the note to the SBA but there was no assignment of the mortgage recorded in the mortgage records of Red River Parish.[1] Hayes testified that after the sale, the bank received a sheriff's check for $58,552.18, payable to the Small Business Administration and American Bank & Trust, dated September 29, 1980, representing the proceeds of the sheriff's sale, less court costs and sheriff's commission. This check was endorsed by American Bank and forwarded to the SBA. Afterwards, the SBA returned to the bank $5,855.22 on November 28, 1980 and the bank applied $5,618.15 of this amount to principal and $236.97 to interest, leaving a balance on the loan of $452.18 which was charged off. Hayes admitted that the bank's mortgage securing the Long loan stated that the note described therein was due "on demand" at American Bank & Trust Company, Coushatta, Louisiana, and that nothing in the mortgage referred to the SBA.
After learning how the proceeds of the sheriff's sale had been distributed, First *345 Federal, through Gahagan, wrote several letters to Horton requesting that the bank honor the agreement and remit to First Federal the amount of $3,553.18. When no amicable resolution was reached, the instant suit was filed for recovery of the alleged overage paid to American Bank, damages and attorney's fees. American Bank filed a peremptory exception alleging that SBA was an indispensable party to the suit and the exception was overruled by the lower court.
After trial, the lower court in written reasons for judgment concluded that Horton had the authority to represent American Bank and that Martin and Gahagan were authorized to represent First Federal at the meeting. The trial judge found, however, that the agreement was not supported by the existence of "cause" on behalf of American Bank and, alternatively, that there was no meeting of the minds between the parties, stating:
"This court has carefully considered all of the testimony and exhibits and has found nothing that supports the existence of cause on behalf of American Bank. There appears to be no motive or consideration such as would influence the American Bank to enter such a contract which in essence would cause it to receive less than it was entitled to under the first mortgage. It is indeed unfortunate that such fine and distinguished individuals could have left with diverse interpretations from the discussions which had taken place. This court must come to the conclusion that no contract as such existed and thus pretermits the issue of breach of contract."
Judgment in accordance with the court's opinion was signed April 4, 1984, and it is from this judgment that First Federal appeals assigning the following errors:
1) the trial court committed reversible error in failing to find a firm agreement between plaintiff and defendant that defendant would not claim more from the sheriff's sale proceeds than the $55,000 amount agreed upon;
2) the trial court committed reversible error in finding that there was no cause for defendant to agree with plaintiff on the amount of $55,000 as being the amount acceptable to defendant; and
3) the trial court committed reversible error in shifting the burden of proof from defendant to plaintiff as to adequate cause, since lack of cause or consideration is a special affirmative defense which must be specially pleaded by a defendant in his answer, and proved at trial by defendant.
There are four elements required for the making of any valid contract:
1) parties possessing the capacity to contract;
2) mutual consent freely given thereto;
3) a certain object; and
4) a lawful purpose.
LSA-C.C. art. 1779; First National Bank of Shreveport v. Williams, 346 So.2d 257 (La.App. 3d Cir.1977).
The burden of establishing the validity of a contract rests upon the party seeking to establish it. North American Contracting Corp. v. Gibson, 327 So.2d 444 (La.App. 3d Cir.1975). Relying on a contract, however, a litigant need not allege it was given for a valid consideration. The law presumes there is sufficient and valid consideration until that question is placed at issue and is established by competent proof on trial on the merits. Conner v. Lake, 228 La. 385, 82 So.2d 324 (1955).

ASSIGNMENT OF ERROR NO. 1
Did the parties reach an agreement that the defendant would claim no more from the sheriff's sale proceeds than $55,000?
We note at the outset that attorney Gahagan and Ronald Martin had the undisputed authority and capacity to contract on behalf of First Federal and that Attorney Donald G. Horton was authorized to contract on behalf of American Bank. The trial court accepted their agency but held that the parties failed to agree, consent, or reach a "meeting of the minds." Both appellant and appellee recognize the potential *346 contract as a crucial issue in the case and have briefed it extensively.
We are convinced from our reading of the depositions, examination of the exhibits, and testimony before the lower court, that the trial court erred in finding that the parties failed to agree on the object of the contract, that object being the amount American Bank would accept in payment of the first mortgage.
Ronald Martin testified in his deposition that the amount agreed upon was $55,000. Donald G. Horton testified he would not quarrel with Martin's recollection, but that he simply did not remember. Thus, Martin's version of the contracted amount fixed at the meeting between the parties is undisputed.
Had this issue turned on the credibility of the witnesses as determined by the trial judge, the manifest error rule would apply and we would be hesitant to disturb his factual finding in this regard. However, except for the testimony of Mr. Hayes, which in no way dealt with the meeting where the agreement was discussed, the trial judge heard no witnesses; the matter was otherwise submitted on depositions and documentary evidence. Thus, under these particular circumstances, this court is in just as good a position as was the trial judge to review the evidence and make findings of fact. Langford v. Calcasieu Parish Police Jury, 396 So.2d 956 (La.App. 3d Cir.1981).
Based on the evidence in the record we conclude that the trial judge was clearly wrong in its finding that no agreement was reached. The uncontradicted evidence is that there was a meeting of the minds as to the amount American Bank, through Mr. Horton, agreed to accept as a pay-off on the first mortgage and this amount was, as Martin testified, $55,000.
American Bank insists at length that since it had assigned the note in question to the SBA before the meeting, it had no right to enter into a contract on behalf of the SBA. Nevertheless, Horton acknowledged that at no time did he inform First Federal's representatives that they were negotiating with the wrong party. Furthermore, Martin testified he had no knowledge that SBA had paid American Bank off on the loan, nor that SBA had been assigned the note. In fact, Mr. Hayes testified without reservation that he considered American Bank to have retained a 10% interest in the loan after the assignment and that the SBA did remit to American Bank $5,855.22 of the sheriff's sale proceeds on November 28, 1980.
Because American Bank agreed to accept $55,000 in payment of its mortgage for the obvious purpose of recouping some of its 10% loss on the loan, and because it failed to reveal to First Federal that the note secured by the mortgage had been assigned to the SBA, we find that it is estopped from now claiming it had no authority to negotiate the pay-off figure.
The common-law doctrine of estoppel has been approved by the courts of this state. Equitable estoppel is defined as the effect of the voluntary conduct of a party by which he is barred from asserting rights or defenses against another party justifiably relying on such conduct and causing him to change his position to his detriment as a result of such reliance. Consequently, there are three elements of estoppel:
1) a representation by action or word;
2) justifiable reliance on the representation; and
3) a change in position to one's detriment because of the reliance.
See State v. Gulf, Mobile and N.R. Co., 191 La. 163, 184 So. 711 (1938); American Bank & Trust Co. v. Trinity Universal Ins. Company, 194 So.2d 164 (La.App. 1st Cir.1967), affirmed 251 La. 445, 205 So.2d 35 (1967); Dept. of Culture v. First Macomb Development, 385 So.2d 1233 (La. App. 4th Cir.1980).
The doctrine was discussed in civil law terminology in Burk v. Livingston Parish School Board, 190 La. 504, 182 So. 656 (1938), in terms of unjust enrichment under Article 1965 of the Civil Code and under the concept that one cannot accept *347 the benefits of an act and repudiate its obligations. Under either common-law or civil law terminology, all the elements of estoppel have been met in the present case. American Bank, through Horton, by his actions and words, encouraged First Federal to agree to the $55,000 pay-off figure and provide a bidder at the sheriff's sale to help minimize both First Federal's and American Bank's potential loss. American Bank certainly enriched itself when it recouped most of its 10% loss; even if it is forced to honor its agreement with First Federal, it will still recoup a portion of that loss. First Federal was certainly justified in relying on Horton's representations and incurred a change in its position to its detriment because of that reliance. If we allow the lower court judgment to stand, American Bank will have been able to claim the benefits of its agreement and at the same time escape its contractual obligations. Such a consequence cannot be allowed.

ASSIGNMENT OF ERROR NO. 2
Appellant contends the lower court erred in its conclusion that there existed no "cause" on behalf of American Bank to enter into the agreement to accept $55,000 as a pay-off on the first mortgage.
An obligation without a cause, or with a false or unlawful cause, is without effect. LSA-C.C. Art. 1893. The "cause" of the contract means the motive for making the contract. LSA-C.C. Art. 1896; in re Canal Bank & Trust Co.'s Liquidation, 178 La. 575, 152 So. 297 (1933).
We agree with appellant's contention. Certainly American Bank had a motive for entering into the agreement. It had already, unbeknown to First Federal, received a 90% payment of its debt from the SBA in the amount of $52,138.22. Mr. Hayes testified he considered American Bank still had a 10% interest in the debt after this payment, although it had assigned the note to the SBA. American Bank's motive is clear: it wanted to mitigate its loss on the 10% as much as possible. First Federal was willing to bid on the property or produce a buyer who was willing to bid, provided the buyer could get both pieces of property involved in the foreclosure and provided First Federal could mitigate some of its loss on its second mortgage. American Bank, if the agreement was consummated, was assured of a bidder on the property and of receiving the difference between $52,138.22 and $55,000 to mitigate its loss. Conversely, First Federal was confident, if the agreement was consummated, of putting together a sale of the properties and receiving the difference between $55,000 and $60,001, less the sale costs and sheriff's commission, to mitigate a portion of its loss on the second mortgage. Without the agreement, there may have been no bidder and the property may not have been sold, or American Bank may have had to get authority from SBA to bid the property in.
Finding that evidence preponderates in favor of an agreement supported by lawful cause, we pretermit further discussion of assigned error $ 3.
The amount of damages proved by First Federal resulting from the breach of contract was $3,553.18, which represented the difference between $55,000 and the bid price, less the costs of the sale. This sum we award appellant.
Appellant also sued for attorney's fees in an amount of not less than $3,500.
A party may not recover attorney's fees except where authorized by statute or provided for by contract. Evans v. Century Ready Mix Corporation, 446 So.2d 860 (La.App. 2d Cir.1984). There is no statutory authority for attorney's fees in this breach of contract suit and there is neither allegation nor proof of such an agreement in the oral contract between the parties. The claim for attorney's fees is rejected.
For the foregoing reasons, the judgment of the lower court is reversed and judgment is rendered in favor of plaintiff-appellant, First Federal Savings & Loan Association of Natchitoches, Louisiana, and against defendant-appellee, American Bank *348 & Trust Company, Coushatta, Louisiana, in the sum of $3,553.18, with legal interest from date of judicial demand until paid, and for all costs of the proceedings below as well as costs of this appeal.
REVERSED AND RENDERED.
NOTES
[1] Recordation is necessary to affect third persons. LSA-C.C. Art. 2294; LSA-R.S. 9:2721.