552 So.2d 983 (1989)
Claudia Fowler PITTMAN, Plaintiff-Appellee,
v.
Maria Rathburn POMEROY and Paul Allen Pomeroy, Defendants-Appellants.
No. 20786-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
On Rehearing December 8, 1989.
*984 McLeod, Swearingen, Verlander, Dollar, Price & Noah by Robert P. McLeod, Paul J. Verlander, Monroe, for defendants-appellants.
Walter C. Dunn, Jr., Monroe, for plaintiff-appellee.
Before HALL, FRED W. JONES, Jr., and SEXTON, JJ.
SEXTON, Judge.
Defendants-appellants Marie and Paul Pomeroy appeal the judgment of the district court ordering specific performance of an option to buy immovable property verbally exercised by plaintiff-appellee Claudia Pittman. In the alternative, appellants ask this court to award damages which they argue they sustained as a result of having to pay taxes, insure, and service the debt of the subject property. These damages arose during that period following the termination of the residential lease between the parties, which lease contained the option in question. Appellee argues the lack of merit to any of appellants' assignments of error and has answered the appeal, seeking a modification of the district court judgment insofar as it failed to award money damages which appellee sought in the district court. For reasons which will be discussed more fully below, we amend and, as amended, affirm.

FACTS
In early January 1985, Ms. Pittman borrowed $25,000 from Monroe Mutual Plan to assist her son in the purchase of a home, mortgaging her own home to secure the loan. Ms. Pittman was to have repaid the amount 90 days after executing the loan. When she was unable to do so, Monroe Mutual threatened to foreclose on her property. Ms. Pittman confided her dilemma to Mrs. Pomeroy, a longtime friend who makes her living as a realtor.
After some discussion between Ms. Pittman and Mrs. Pomeroy, Mr. and Mrs. Pomeroy agreed to attempt to borrow $35,000 from their bank to help Ms. Pittman out of her difficulties. In order to facilitate the loan, Ms. Pittman sold her home to the Pomeroys, following which she executed a one-year residential lease of the home with an option to purchase it back for $35,000.
At the time of the sale in June 1985, the Monroe Mutual loan was paid off, expenses incidental to the sale and loan were deducted, and the remainder was given to the Pomeroys, by agreement of the parties. That evening the Pomeroys gave Ms. Pittman $1,326.06 so that Mrs. Pittman could pay off a sizable telephone bill.
Ms. Pittman continued to live in the house, making monthly lease payments to *985 the Pomeroys. The evidence reflects that lease payments were always or frequently late and that the lease payment for at least one month was never made. Throughout the lease, Ms. Pittman continuously represented to the Pomeroys that she intended to repurchase the home. These statements were usually made in the context of Ms. Pittman's expression of hope that a financial deal of some sort was about to materialize. Apparently, the deal never materialized.
Late in April 1986, Ms. Pittman, Mrs. Pomeroy, and a mutual friend, Ms. Nell Heard, had dinner one evening. Testimony regarding what was discussed in relation to the lease is in conflict. On the one hand, both Ms. Pittman and Ms. Heard testified that Mrs. Pomeroy indicated that Ms. Pittman did not have to exercise the option in writing or within the delay provided in the lease instrument.
Mrs. Pomeroy testified that when the ladies went out to dinner there was no discussion whatsoever about the exercising of the option. She specifically denied ever having told Ms. Pittman that she need not exercise the option in writing or in a timely manner, but testified that she told Ms. Pittman that the Pomeroys intended to abide by the written agreements.
Some time after the dinner engagement, Ms. Pittman attempted, on at least two occasions, to secure financing to repurchase the home. On one occasion, while she was with one of the loan officers, Mrs. Pomeroy was requested to go to the loan office to discuss the matter, and she did so. Ultimately, Ms. Pittman was turned down for the loan.
On the last day or next to last day of the lease term,[1] Ms. Pittman telephoned Mrs. Pomeroy late in the evening. Mrs. Pomeroy was not at home, however, and Mr. Pomeroy took a message. When Mrs. Pomeroy returned from work, her husband advised her of the message, but she indicated she did not intend to return the call. Ms. Pittman called once again and advised Mrs. Pomeroy that she was in possession of a cashier's check for $35,000. Mrs. Pomeroy responded that it was too late to exercise the option. Notwithstanding, Ms. Pittman requested that the Pomeroys meet her at the bank the next morning. The next morning Mr. and Mrs. Pomeroy went to the bank to meet Ms. Pittman, but Ms. Pittman was not there.
The following week the Pomeroys, through their attorney, gave Ms. Pittman notice to vacate the subject premises. Ms. Pittman filed a lawsuit for specific performance within days of this notice. The Pomeroys filed an answer and reconventional demand denying plaintiff's allegations generally and specifically and seeking damages for plaintiff's failure to vacate the premises under the residential lease.
Following a bench trial, the district court ruled in favor of Ms. Pittman ordering specific performance and rejecting all of the Pomeroys' demands. The Pomeroys have appealed this adverse ruling, seeking a reversal of the district court judgment or, in the alternative, damages under the residential lease or in quantum meruit. Ms. Pittman has filed an answer seeking a modification of the judgment below.

PURCHASE OPTION
A. The Writing Requirement
This appeal calls upon us to resolve a conflict between two well-established principles of law. On the one hand, argued strenuously by the Pomeroys, is the statutory and jurisprudential rule that any contract concerning immovable property must be in writing and no modification of such a contract will be enforced unless it is also in writing. Ms. Pittman, on the other hand, argues that the Pomeroys should be estopped from defending on the basis of her failure to exercise the purchase option in writing because she justifiably relied on the representations by Ms. Pomeroy that no written exercise of the option would be necessary. In short, she argues that she *986 failed to exercise the option in writing through the fault of the defendants where defendants' interest was contrary to its fulfillment.
It has long been a tenet of Louisiana law that contracts regarding the transfer or encumbrance of immovable property must be in writing. LSA-C.C. arts. 1839, 2440. This applies both to agreements and options to purchase or sell real estate, Louisiana State Board of Education v. Lindsay, 227 La. 553, 79 So.2d 879 (1954); Reaux v. Iberia Parish Police Jury, 454 So.2d 227 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 120 (La.1984); and the exercise of options to buy real estate, Barchus v. Johnson, 151 La. 985, 92 So. 566 (1922); Louisiana State Board of Education v. Lindsay, supra. The very purpose of the writing requirement for contracts regarding immovable property is to prevent misunderstanding over verbal terms. Rebman v. Reed, 335 So.2d 37 (La.App. 4th Cir.1976), writ denied, 338 So.2d 699 (La. 1976). The instant case illustrates the importance of that underlying policy.
The Pomeroys place great reliance on Ms. Pittman's failure to exercise the option in writing. Ms. Pittman does not deny that she did not exercise the option in that manner; however, she and her main witness testified that Mrs. Pomeroy reassured her that a written exercise was not necessary. Although Mrs. Pomeroy disputed that she ever made such a statement, the district court implicitly accepted Ms. Pittman's version. As a reviewing court, we must give great weight to the factual conclusions of the trier of fact and, where there is a conflict in testimony, reasonable inferences of fact and reasonable evaluations of credibility should not be disturbed on review, even though we may feel that our own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand 370 So.2d 1262 (La.App. 3rd Cir.1979), writ denied, 374 So.2d 660 (La.1979); Canter v. Koehring Company, 283 So.2d 716 (La.1973); Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985).
Were we to dispose of this issue solely on the basis of the lack of a written exercise of the purchase option, the outcome would be predictable. What makes this case different is an unusual combination of factors which convinces us that Ms. Pittman's reliance on Mrs. Pomeroy's assurances was reasonable.
Both ladies testified that they had been friends for a number of years, something which obviously led Ms. Pittman to believe that Mrs. Pomeroy's expressed lack of interest in a written exercise of the option was sincere. The real estate which is at issue here was the home in which Ms. Pittman had lived for decades and where Mrs. Pomeroy frequently visited her. Ms. Pittman was always late with the rent on the subject property and the Pomeroys apparently never sought to exercise their rights under the lease agreement in this regard.
More important, however, are the following facts: Mrs. Pomeroy is a realtor and is obviously well versed in matters regarding real estate, including that all agreements affecting real estate must be in writing; the original set of documents, which consisted of a sale and simultaneous lease with an option to purchase, was put together by Mrs. Pomeroy's attorney; and Ms. Pittman, a nurse, was not represented by counsel either in the negotiation stage or at closing. The attorney who represented Mrs. Pomeroy at that time testified that he recommended to Ms. Pittman that she seek counsel for advice or interpretation of the pertinent documents, but Ms. Pittman denies that such advice was offered.
The effect of equitable estoppel is to preclude a party from asserting rights against another where the other justifiably relied upon the party's conduct and changed his position so that he will suffer injury if the party is allowed to repudiate his conduct. American Bank & Trust Co. v. Trinity Universal Insurance Co., 251 La. 445, 205 So.2d 35 (1967); Anderson v. Anderson, 506 So.2d 200 (La.App. 5th Cir. 1987), writ denied, 508 So.2d 70 (La.1987). This doctrine is founded upon good faith and is designed to prevent injustice by barring *987 a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence. American Bank & Trust Co. v. Trinity Universal Insurance Co., supra; Dizell v. Durr, 519 So.2d 863 (La.App. 4th Cir.1988). Estoppel is not favored by Louisiana courts; any party seeking to invoke it must specifically plead and prove the factual elements of the doctrine. Wiley v. Richland Parish School Board, 476 So.2d 439 (La.App. 2d Cir.1985).
In order to prevail upon a plea of equitable estoppel, one must show (1) a representation by conduct or word, (2) justifiable reliance on that representation, and (3) a detrimental change in position because of the reliance. First Federal Savings & Loan of Natchitoches v. American Bank & Trust Co. of Coushatta, 461 So.2d 341 (La.App. 2d Cir.1984); Texaco, Inc. v. Newton and Rosa Smith Charitable Trust, 471 So.2d 877 (La.App. 2d Cir.1985), writ denied, 475 So.2d 1104 (La.1985).
In the instant case, Ms. Pittman's petition contains the following language:
On numerous occasions, Mrs. Pittman spoke with Mrs. Pomeroy about exercising the option to purchase her home back. On these occasions, Mrs. Pittman asked Mrs. Pomeroy if she needed to give written notice of her intent to exercise her option and each time Mrs. Pomeroy assured Mrs. Pittman that she did not need to give any notice. Mrs. Pomeroy said she would even give Mrs. Pittman an extension of time beyond the term of the lease in which to exercise the option. Additionally, on numerous occasions Mrs. Pomeroy told Mrs. Pittman that she did not want Mrs. Pittman's home and that she did not want to make any money off Mrs. Pittman or harm her in any way.
Prior to June 20, 1986, Mrs. Pittman obtained a loan from American Bank & Trust Company in Monroe for the Thirty-five Thousand and No/100 ($35,000.00) Dollars with which to exercise her option to repurchase her home....
This language fulfills Ms. Pittman's obligation to plead the factual elements of the doctrine. Ms. Pittman alleged that Mrs. Pomeroy expressly waived the requirement that she exercise the option in writing and that she secured a loan for $35,000 in anticipation of exercising the option to repurchase her home, implicitly pleading that she had not only relied on that representation, but also detrimentally changed her position by incurring a $35,000 loan.
It is apparent that Ms. Pittman has both pled the requisite factual basis underlying her claim and has proven that said facts exist. Mrs. Pomeroy's waiver of the writing requirement is proven by the testimony of Ms. Pittman, as well as a mutual friend of Ms. Pittman and the Pomeroys who had nothing to gain by her testimony. Such a waiver would not appear unusual, given the long friendship between the ladies.
Mrs. Pomeroy's actions contradict her testimony as to her intentions. Some time after the dinner during which Mrs. Pomeroy verbally waived the writing requirement, but before the expiration of the lease and option, she went upon request to a meeting between Ms. Pittman and a loan officer concerning Ms. Pittman's attempt to secure a loan to repurchase the house. Additionally, and more poignantly, Ms. Pittman requested that the Pomeroys go to her bank the morning following her eleventh hour phone call during which she verbally exercised the option, and they did so. Although their testimony was to the effect that Ms. Pittman had to exercise the option in writing, the Pomeroys' actions indicate that they understood Ms. Pittman to be pursuing financing toward purchasing her home and encouraged her accordingly, as well as taking actions in accordance with her requests the morning following her verbal exercise of the option.
We are not unmindful of large numbers of cases which have refused to enforce verbal modifications of written agreements dealing with immovable property, some of which will be discussed below.
In Barchus v. Johnson, supra, the defendant gave plaintiff a thirty-day option to purchase real estate for $50,000. About one week prior to the option's expiration, plaintiff telephoned his acceptance, which *988 he confirmed in a letter about one week after the expiration of the option. The court found plaintiff's written acceptance to be too late, despite the timely verbal acceptance.
In Louisiana State Board of Education v. Lindsay, supra, defendant gave a 60-day option to the president of Southern University to purchase his farm. The board approved the purchase four days before the option expired and made a formal request of the building authority to appropriate the requisite funds to purchase the farm. The university's president telephoned his verbal acceptance to defendant's realtor within the delay. Several days after the option expired, the building authority appropriated the funds for the purchase, but defendant wrote to advise plaintiff that the option had expired and that he had sold the farm to another. The district court ruled in plaintiff's favor and ordered specific performance. The supreme court reversed, finding plaintiff's "acceptance" just prior to the option's expiration not sufficiently unqualified and unconditional to constitute a true acceptance of the offer because it was contingent upon the building authority's appropriation of the funds and, further, that the "acceptance" was not in writing.
In Harrell v. Stumberg, 220 La. 811, 57 So.2d 692 (1952), the Supreme Court held that the time within which a real estate closing must take place, which was provided in the written agreement, cannot be extended by estoppel.
On the other hand, we are also aware of cases, though fewer in number, which would permit the modification of a written contract regarding immovable property by the words or actions of one of the parties.
In Davis v. Oaklawn, 212 La. 392, 31 So.2d 837 (1947), two plaintiffs sued defendant for specific performance on an option to buy immovable property. Both plaintiffs had leased separate lots from defendant, each lease containing an option to purchase the leased premises. Both plaintiffs exercised their options in writing, which was acknowledged in writing by the president of the defendant corporation. Part of the agreement was that the act of sale would occur no later than one month following the expiration of the option. An attorney representing the plaintiffs contacted the defendant corporation to schedule the closing and was told that it could not be done until after the one-month period. The day before the scheduled closing, defendant's president sent plaintiffs registered letters advising them that other arrangements had been made to sell the properties. Plaintiffs' suit in the district court resulted in a judgment favorable to the defendant, but the supreme court reversed:
These plaintiffs were lulled into inactivity... relying on the good faith of the defendant, having been led to believe that the acts of sale would be passed after the first of the year.... Certainly this defendant ... cannot now take the position that, because of such delay, these plaintiffs have lost their rights under the contracts to purchase. This being so, plaintiffs are entitled to specific performance of the contracts.
Davis v. Oaklawn, 31 So.2d at 840.
Most closely akin to the instant case is Briggs v. Siggio, 285 So.2d 324 (La.App. 3rd Cir.1973), writ denied, 288 So.2d 641 (La.1974), on appeal after remand, 313 So.2d 379 (La.App. 3rd Cir.1975), writ denied, 318 So.2d 41 (La.1975). In this suit plaintiff sought specific performance on an option to purchase real estate alleging that defendants had waived the requirement that plaintiff exercise the purchase option in writing. The Third Circuit reversed the district court's judgment sustaining the exception of no cause of action and remanded to the district court for trial.[2]
Plaintiff's allegations in Briggs v. Siggio were that the defendants had granted plaintiff options to purchase three separate 40-acre tracts, the first of which could be exercised during the first nine months of the next year, the second during the first *989 nine months of the following year, and the third during the first nine months of the year after that. Each option agreement required that the plaintiff notify the grantor in writing of the intent to exercise within the time frame provided.
The first option was allegedly exercised verbally and the sale was executed within the time frame provided. The plaintiff alleged that the second option was exercised in writing only because the plaintiff was unable to locate the defendant during the time allowed to exercise the option. Thus the litigation involved the exercise of the third option which the plaintiff alleged was exercised verbally and acknowledged by the defendant. Plaintiff further alleged that the defendant waived the necessity for compliance with the technical writing requirement.
The petition also alleged that the defendant agreed to order an abstract of title at the time the option was verbally exercised and to remove certain improvements. The plaintiff alleged that the defendant employed a contractor to remove these improvements. Plaintiff further alleged that upon learning that the defendant had not ordered the title abstracts, he recontacted the defendant who again acknowledged notice of the option and authorized plaintiff's agent to order the abstract for him.
In determining that plaintiff's allegations supported a cause of action, in spite of the clear statutory law that every transfer of immovable property must be in writing, the Third Circuit stated:
It is our view that plaintiff has stated a cause of action under LSA-C.C. Article 2040 and the authorities cited. The petition states that defendants repeatedly acknowledged notice of the verbal exercise of the option and waived the requirement that it be in writing. Plaintiff alleges further that relying on these waivers and upon the other assurances, acknowledgments and conduct by defendant set forth above, he considered it unnecessary to exercise the option in writing. Under these allegations, evidence could be introduced to show it was through the fault of defendants that the option was not exercised in writing, and that this condition must therefore be considered fulfilled.
Briggs v. Siggio, 285 So.2d at 327.
The court in Briggs relied on LSA-C.C. Art. 2040, now repealed, the predecessor to LSA-C.C. Art. 1772. The version in effect at the time the contracts under consideration were signed is as follows:
A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment.
All parties are in agreement that Ms. Pittman failed to exercise the purchase option in writing; thus, the condition has not been fulfilled. Importantly, it was the fault of the defendants that the condition was not fulfilled because Mrs. Pomeroy reassured her that a writing was not necessary. Finally, the record amply reflects that the Pomeroys had an interest contrary to the fulfillment of the condition: they had paid somewhat less than $35,000[3] for a house that was appraised for more than $50,000.
Here, Ms. Pittman was lulled into believing, by the words and actions of the Pomeroys, that she could exercise the option to repurchase her home without the necessity of a writing. Whether couched in the fault terms of LSA-C.C. Art. 1772 or in the terms of estoppel, we conclude that the Pomeroys cannot, under the very limited facts presented in the instant case, defend this suit for specific performance based on Ms. Pittman's failure to exercise the purchase option in writing.
B. Mrs. Pomeroy as Representative of the Community
The Pomeroys assert that Mrs. Pomeroy was not authorized to waive the writing requirement, though they staunchly maintain that no such waiver was ever given to Ms. Pittman.
Because the subject property was acquired by the Pomeroys as husband and *990 wife and the record does not disclose that they ever entered into a separate property agreement, the law presumes that it is community property. LSA-C.C. Arts. 2338, 2340. The concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables. LSA-C.C. Art. 2347. When the concurrence of the spouses is required by law, the alienation, encumbrance, or lease of community property by a spouse is relatively null unless the other spouse has renounced the right to concur. LSA-C.C. Art. 2353. A relatively null act can be validated by subsequent ratification. South Central Bell Telephone Co. v. Eisman, 430 So.2d 256 (La.App. 5th Cir.1983), writ denied, 437 So.2d 1154 (La.1983).
In Lane v. Lane, 375 So.2d 660 (La.App. 4th Cir.1978), writ denied, 381 So.2d 1222 (La.1980), following a separation between plaintiff and defendant, the plaintiff husband sold community-owned stocks and used the proceeds to purchase new stocks. Instead of repudiating his actions and demanding the cost of reacquiring her interests in the sold stock, the defendant wife demanded one-half of the newly acquired stocks. The court there held that the wife's demand for her interest in the new stock was a ratification of his unauthorized acts.
In the instant case, the evidence demonstrates that Mrs. Pomeroy handled all aspects of the negotiations of this matter from its inception. Mrs. Pomeroy learned of Ms. Pittman's dilemma, she contacted her bank to inquire into possible financing, and she went to her own lawyer's office with Ms. Pittman when the details of the various transactions were finalized. Mr. Pomeroy's only contact with Ms. Pittman during that period was his attendance at the closing. Thereafter, all of the contact between Ms. Pittman and the Pomeroys was through Mrs. Pomeroy. The only other contact which Mr. Pomeroy appears to have had with this matter is when he answered the telephone when Ms. Pittman called near the termination of the lease, and his only action in that regard was to take a message for his wife.
Mr. Pomeroy had no involvement in the negotiations and finalizing of the details. His only real contact with the matter was to sign documents at the closing and to take one telephone message.
Through their actions, the Pomeroys communicated to Ms. Pittman that Mrs. Pomeroy was in charge of the matter and that Mr. Pomeroy's participation was only required when documents were to be signed. Mr. Pomeroy's lack of participation, Mrs. Pomeroy's complete handling of the matter, Ms. Pittman's verbal exercise of the option and incurring of the $35,000 loan in reliance on Mrs. Pomeroy's representations all combine to prevent the Pomeroys from asserting Mrs. Pomeroy's lack of authority to waive the writing requirement. Additionally, not only did Mr. Pomeroy fail to repudiate any waiver of the writing requirement, he tacitly acquiesced in it by going with his wife to Ms. Pittman's bank pursuant to her request the morning after her eleventh hour phone call. Cf. Tedesco v. Gentry Development, Inc., 540 So.2d 960 (La.1989), where the court refused to order specific performance under slightly different circumstances because the prospective purchasers did not change their position in any manner in reliance on the defendant's conduct and because the defendant immediately repudiated the actions of its president. In the instant case, Ms. Pittman's borrowing of $35,000 obviously constitutes a change in her position, and the Pomeroys' going to her bank the next morning demonstrates an acquiescence by both in Ms. Pittman's verbal exercise of the option rather than a repudiation of it.
For these reasons, as well as those considered in the previous subsection, we hold that, under the unusual and limited circumstances presented by this appeal, defendants may not assert Mrs. Pomeroy's lack of authority to waive the writing requirement.[4]
*991 C. Timeliness of Ms. Pittman's Exercise of the Option
The Pomeroys argue that Ms. Pittman failed to timely exercise the purchase option, whether or not a verbal exercise may be valid. The purchase option at issue provides as follows:

At any time during the term of this lease, the Lessee, upon giving not less than thirty (30) days notice in writing to the Lessor, shall have the right to purchase the leased premises. The purchase price shall be for the sum of THIRTY-FIVE THOUSAND AND NO/100 ($35,000.00) DOLLARS. This sales price shall be a net amount to the Lessor, and all expenses in connection with the sale, including but not limited to, title insurance, survey, photographs, escrow funds, recording fees, document preparation, and all other closing cost [sic], including attorney's fees, shall be paid by the Lessee.
(Emphasis ours.)
The Pomeroys argue that this language means that the option must have been exercised not less than 30 days prior to the termination of the lease. Accordingly, even though Mrs. Pomeroy might have had authority to waive the writing requirement and even though the verbal exercise of the option may have been valid, both of which the Pomeroys deny, they argue that Ms. Pittman waited too long to exercise the option. Ms. Pittman argues that this is of no moment because the Pomeroys were frequently reminded of her intent to exercise the option.
The lease provision quoted above is susceptible of more than one interpretation, in our opinion. On the one hand, as the Pomeroys argue, the provision could be read to mean that the option had to be exercised prior to the last thirty days of the lease. However, it could also mean that the option had to be exercised "[a]t any time during the term of the lease," as long as the Pomeroys were given 30 days notice. The 30-day provision could reasonably provide for arrangements between the exercise of the option and the closing.
Article 2057 of the Louisiana Civil Code provides as follows:
In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation.
Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor.[5]
Under the facts presented, we must conclude that the ambiguous provision be construed in a manner favorable to Ms. Pittman and against the Pomeroys because Ms. Pittman was the obligor with regard to the purchase option. Additionally, Mrs. Pomeroy, a knowledgeable and experienced business person, had an obligation to explain this ambiguous provision to Ms. Pittman, a lay person presumably unfamiliar with matters of realty. Larriviere v. Roy Young, Inc., 333 So.2d 254 (La.App. 3d Cir.1976). Accordingly, defendant's argument that the option was not exercised timely is without merit.
D. Tender of the Purchase Price
The Pomeroys also take the position that Ms. Pittman failed to tender the purchase price to them. Ms. Pittman points out that she offered to do so when she called them to exercise the option. She was then advised that she was too late and they would not accept it. Both defendants testified that they would not have accepted even had she offered it in person.
*992 The argument by the Pomeroys is not well taken. The option, by its very terms, did not require that the purchase price be tendered to them at the time the option was exercised. Further, as admitted by the Pomeroys, Ms. Pittman's offer of the purchase price would have been refused. The law does not require a person to do vain and useless acts. Louisiana Highway Commission v. Bullis, 197 La. 14, 200 So. 805 (1941); Scurria v. Russo, 134 So.2d 679 (La.App. 4th Cir.1961). There is no merit to this argument by the Pomeroys.
E. Stipulated Damages
Because we agree with the trial court that Ms. Pittman may exercise the option, we do not consider defendants' assertion that they are entitled to damages as stipulated in the lease for plaintiff's failure to deliver the premises at the conclusion of the lease.

UNJUST ENRICHMENT
The Pomeroys argue, in the alternative, that they are entitled to recover for expenses incurred for taxes, insurance, and debt service on the subject property after the written lease terminated, while Ms. Pittman enjoyed rent-free, cost-free possession of the premises. Ms. Pittman argues that the Pomeroys are not entitled to recover any amount for those expenses because it was through their own fault in refusing to comply with her exercise of the purchase option that any additional expenses were incurred.
In order for a party to prevail on a claim that another has been unjustly enriched, he must show that (1) there has been an enrichment; (2) there has been an impoverishment; (3) there has been a causal relationship between the enrichment and the improverishment; (4) there was an absence of justification or cause for the enrichment or impoverishment; and (5) there is no other remedy at law. Cahn v. Cahn, 468 So.2d 1176 (La.1985); Kirkpatrick v. Young, 456 So.2d 622 (La.1984); Creely v. Leisure Living, Inc., 437 So.2d 816 (La.1983); Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116 (La.1974).
Unjust enrichment is an equitable doctrine based upon the principle that one who benefits from another's labor and materials should not be unjustly enriched thereby. Wilkins v. Hogan Drilling Co., 471 So.2d 863 (La.App. 2d Cir.1985); First National Bank of Shreveport v. Crawford, 455 So.2d 1209 (La.App. 2d Cir.1984), writ denied, 459 So.2d 538 (La.1984). The law implies a promise to pay a reasonable amount even in the absence of a specific contract. Wilkins v. Hogan Drilling Co., supra. Application of this doctrine is restricted to those instances where one party truly receives a windfall from another without legal cause. Carter v. Flanagan, 455 So.2d 689 (La.App. 2d Cir.1984).
In the instant case, the Pomeroys have, since the lease agreement expired by its own terms, continued to make monthly payments on the $35,000 loan they incurred at the time they purchased the property from Ms. Pittman. In addition, they have maintained insurance on the property and paid the property taxes when due. In essence, they have been paying those expenses for which Ms. Pittman would have been responsible had they acquiesced in what we have determined to be a valid exercise of the purchase option.
Because we have concluded that Ms. Pittman is entitled to specific performance of the purchase option, we must also conclude that, unless the Pomeroys are permitted to recover those amounts which they have expended on the subject premises since the expiration of the written lease, Ms. Pittman will have been unjustly enriched thereby.
Not only will she have been "enriched" by the Pomeroys' payment of those expenses associated with the house and the Pomeroys "impoverished" by the payment therefor, there is also an obvious relationship between the enrichment and the impoverishment.
Additionally, we believe there will be no justification or cause for either the enrichment or the impoverishment. While Ms. Pittman asserts that the Pomeroys caused the enrichment/impoverishment when they refused her exercise of the option, we do not believe under the circumstances that *993 this constitutes a legal cause or justification sufficient to deny them a recovery of the amounts expended, all of which will inure to her benefit.
Finally, if the Pomeroys cannot recover their expenses under the doctrine of unjust enrichment, then they have no legal remedy by which to recover those amounts.
In LeBlanc v. Smith, 518 So.2d 3 (La. App. 4th Cir.1987), the plaintiff/ex-wife sued her defendant/ex-husband to be recognized as owner of a one-half interest in community property which they had acquired, including a piece of immovable property. During their marriage, plaintiff and defendant acquired a home in their own names, although the evidence showed that they had the property put in their names because his parents, who made the down payment and all mortgage payments, and who lived in and made improvements to the property, were unable to acquire financing on their own. The evidence also showed that plaintiff and defendant put forth no money or labor to benefit the property.
The court in LeBlanc concluded that the authentic evidence established that the record owners of the property were plaintiff and defendant. However, finding that his parents' efforts and industry would inure to the benefit of plaintiff and defendant, it further concluded that defendant's parents were entitled to be reimbursed for their expenditures on the property.
We find the instant situation to be analogous and determine that the Pomeroys should recover the expenses which they have paid since the expiration of the written lease. The Pomeroys introduced evidence as to the extent of these expenses at trial, which obviously only covered the amounts expended until that time. By their nature, these expenses are variable, particularly with respect to the interest on mortgage payments. We thus believe the record is such that we are unable to make a determination of the exact amount of reimbursement due to the Pomeroys and will therefore remand for the trial court to make this determination. The remand will be for the limited purpose of receiving evidence as to the sums paid for insurance premiums, interest on mortgage payments, and property taxes from the date of the trial until the finality of this judgment; combining that evidence with the sums which the Pomeroys proved at the original trial that they had paid subsequent to the conclusion of the lease and the trial of this cause; and rendering a judgment in favor of the Pomeroys to that extent.

BALANCE OF PURCHASE PRICE
Ms. Pittman has answered the Pomeroys' appeal, seeking to recover the difference between the purchase price recited in the deed to the subject premises and the amount she "received" by virtue of the extinction of the loan she had from Monroe Mutual Plan. The Pomeroys argue that it was the intention of all concerned to extinguish the Monroe Mutual debt, pay all sale-related expenses, and give the surplus to them. They assert that $35,000 was arbitrarily selected in order that there would be a safe margin of error, due to the uncertain cost of extinguishing the Monroe Mutual loan and the uncertain total of expenses associated with the transaction.
This aspect of the appeal requires us to engage in some of the same considerations as those found in the section immediately above. In order for Ms. Pittman to recover, she must show that the five elements of unjust enrichment have been met.
The first three elements are clearly met: Ms. Pittman has been impoverished to the extent she did not receive the full amount recited in the deed (less sale-related expenses), the Pomeroys have been enriched by an identical amount, and there is a direct relationship between the two. Additionally, Ms. Pittman does not appear to have any other remedy at law; thus, the final element has also been met.
However, it appears that there is a justification or cause for both the impoverishment and the enrichment: the parties agreed to this arrangement. Ms. Pittman admitted on cross-examination that she knew that any surplus funds from the sale would go to the Pomeroys, though she testified that she understood those funds *994 were to be used to help her with certain other debts which she had accumulated. She initially denied having signed the settlement statement at the closing, which statement clearly disclosed that the surplus funds went to the Pomeroys, but admitted having done so when confronted with the original of the statement, which contained her signature.
The attorney who prepared all the documents and conducted the closing testified that he met with Ms. Pittman and Mrs. Pomeroy a day or so before the closing to finalize all of the details. Testifying from his handwritten notes taken during the meeting, the attorney indicated that no money from the sale would go to Ms. Pittman. He indicated that both Ms. Pittman and Mrs. Pomeroy were present at that meeting.
He also testified that all documents were reviewed at the time of the closing, and Mrs. Pomeroy testified specifically that the settlement statement was discussed during the closing prior to Ms. Pittman's signing it.
Simply put, we believe the record supports the Pomeroys' arguments. In addition to extinguishing the Monroe Mutual debt and paying expenses incidental to the transaction, the Pomeroys gave Ms. Pittman $1,326.06 for her to pay off a telephone bill which she had accumulated. Further, there were expenses associated with the transaction, the costs for which were unknown at the time of closing.
In sum, we conclude that Ms. Pittman agreed that any surplus from the sale would be delivered to the Pomeroys and find no merit to this claim.

CONCLUSION
For the reasons considered above, the district court judgment is affirmed insofar as it ordered specific performance of the option to purchase the subject property, with expenses of that sale to be borne by the appellee.
The district court's judgment is amended to the extent it failed to award damages to appellants for those expenses which they incurred on the subject property following the termination of the lease agreement. Because the record on appeal is not sufficient for us to calculate them, this matter is remanded to the district court to receive evidence of these expenses in accordance with this opinion.
Appellee's demands, as raised in her appellate answer, are rejected.
All costs of this appeal and the proceeding below are assessed to appellants.
AMENDED IN PART, AFFIRMED IN PART, AND REMANDED.
Before HALL, MARVIN, FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.

ON REHEARING
PER CURIAM.
Plaintiff's application for rehearing is granted for the limited purpose of this clarification of our original opinion with respect to the scope of the order of remand.
It is our intention that on remand, in addition to the items specified in the original opinion, the district court should receive and consider evidence of revenues the defendants may have received on the property at issue and any expenses pertaining to maintenance and upkeep of that property.
NOTES
[1] The record evidence is somewhat contradictory on the specific date; however, it does not affect the outcome of the case.
[2] On remand the district court concluded the evidence did not support the allegations, and that determination was subsequently affirmed.
[3] Although the deed reflected a purchase price of $35,000, the record reflects that Ms. Pittman received substantially less, as will be discussed later.
[4] As expressed in Tedesco v. Gentry Development, Inc., supra, we need not distinguish between apparent authority and equitable estoppel in reaching this result.
[5] Art. 1958, the predecessor to Art. 2057, provided as follows:

But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee.
This article was frequently applied to interpret ambiguities in contracts against the party who prepared the contract. Kuhn v. Stan A. Plauche Real Estate Co., 249 La. 85, 185 So.2d 210 (1966); Kenner Industries, Inc. v. Sewell Plastics, Inc., 451 So.2d 557 (La.1984); Fullerton v. Scarecrow Club, Inc., 440 So.2d 945 (La.App. 2d Cir. 1983).