HAWTHORNE, Justice.
 

 Each of the plaintiffs, Jack P. Davis and Albert Peacock, instituted a suit for specific performance of a contract to purchase certain real estate situated in the Parish of Jefferson, the Davis suit bearing No. 18716 on the docket of the Twenty-fourth Judicial District Court for the Parish of Jefferson, and the Peacock suit bearing No. 18717 on the docket of that court. The property involved in each suit was fully described in plaintiff’s petition, and in the Davis suit was designated as No. 88 Oaklawn Subdivision and in the Peacock suit as No. 90 Oaklawn Subdivision. The defendant in each suit is Oaklawn, Incorporated, and the pleadings in both suits are identical, except that in the Peacock case the plaintiff, in addition to seeking specific performance, prayed for judgment for damages in the sum of $1,250 as a result of the non-performance of the contract on the part of defendant.
 

 By stipulation of counsel the cases were consolidated for the purpose of trial, with separate judgments to be rendered. After trial on the merits the lower court rendered judgment rejecting plaintiff’s demands in each case. From these judgments both have appealed, and these cases are also consolidated in this court.
 

 Each plaintiff on May 21, 1943, entered into a contract leasing the property described in his petition from défendant, Oak-lawn, Incorporated, for a period of 30 months, both leases to expire on November 21, 1945. Each of these leases granted unto the lessee an option to purchase the property described therein for the price
 
 *199
 
 and sum of $4,950. The plaintiff Davis deposited with the defendant $40 in cash as additional consideration for his option, and the plaintiff Peacock the sum of $50. The pertinent part of the clause in each lease granting the option reads as follows:
 

 “It is further understood between the parties that the Lessee herein is granted the specific privilege to purchase the premises herein described for the sum and amount of: Four Thousand Nine Hundred Fifty ($4,950.00) Dollars at any such time, during the period of this lease, * * * and in that event the Lessor agrees to Credit to the account of the Lessee on the sale price, any and all sums which have, at that time, been paid by the Lessee as rental Except, the following enumerated charges which are to be deducted from such Credit:
 

 “(1) — Interest at the rate of 5% per annum on the purchase price, to be computed for the actual number of months or days the Lessee has occupied the said premises.
 

 “(2) — Taxes: State, Parish and all or any special assessments which might have been paid by the Lessor together with the prorata rate for the current year in which the option is exercised.
 

 “(3) — Insurance: Fire and War Risk Insurance at full property value; Tornado at approximately one-half of value.”
 

 On November 21, 1945, which was the expiration date of the options, both plaintiffs exercised their options to purchase by giving written notices addressed to Oak-lawn, Incorporated, in care of William Melde, its president. These written notices were delivered to Melde at his home in the presence of Jesse Jones, the designated and authorized agent of defendant, who was handling these transactions for the defendant corporation. On the written notices of acceptance, Melde, the president of the defendant corporation, acknowledged in writing that the plaintiffs had exercised their respective options, and signed for'the defendant, Oaklawn, Incorporated, as president. The acknowledgments stipulated that the acts of sale were to be passed before December 21, 1945. These acknowledgments of Melde, as president of Oak-lawn, Incorporated, were notarized before George D. Smart, attorney and notary public, who was suggested for this purpose by defendant’s agent, Jesse Jones.
 

 At that time neither one
 
 of
 
 these plaintiffs had sufficient funds available to pay the purchase price of the property, and, upon the suggestion of Jesse Jones, arrangements were made for these plaintiffs to appear at the local office of W. B. Leedy & Company, Inc., on November 23, 1945, for the purpose of making applications for loans to realize sufficient funds to pay the purchase price of the respective properties.
 

 Plaintiffs testified that they were referred to W. B. Leedy & Company, Inc., by Jones, but this was denied by Jones. Be that as it may, on the 23rd of November they did appear at the office of W. B. Leedy and Com
 
 *200
 
 pany, Inc., and at that time, through Mr. Louis P. Theriot, Jr., made applications for the loans. According to the testimony of Mr. Theriot, the representative of W. B. Leedy & Company, Inc., who took the applications, Jones was actually present at the time the applications were made, and we are convinced that he participated therein.
 

 In due course each application was approved for a loan of $4,500, each loan to be secured by a mortgage on the property to be purchased. Both plaintiffs were then referred to George D. Smart, the same notary before whom they had appeared on November 21, who was to prepare the acts of sale and all necessary papers incidental thereto.
 

 After making these applications, plaintiffs left the entire matter in the hands of Theriot, representative of W. B. Leedy & Company, Inc., and the notary and attorney, George D. Smart, with whom this firm did business. We are convinced that plaintiffs relied on these individuals entirely from that time, as they themselves had no knowledge or experience in such matters.
 

 On December 21, 1945, Jack Meyers, an attorney who represented these plaintiffs in their acceptance of the options, but who is not their attorney in these cases, called Mr. Theriot by telephone and was referred to Melde. Being unable to reach Melde, Mr. Meyers then talked with Jesse Jones, agent of the defendant corporation, who informed him that the acts of sale could not be passed on that day. In this conversation, Meyers asked, for these plaintiffs, an extension, and Jones suggested at that time waiting until after the beginning of the year (1946) to pass the acts of sale, and that no written extension or agreement was necessary. During this conversation Meyers suggested that the Davis sale was in a condition to be passed, but Jones told him that he thought it best to wait and pass both acts of sale at the same time.
 

 The plaintiff Peacock testified that prior to December 21, 1945, he was informed by Mr. Theriot that he had talked with both Jones and Melde and that both had stated that they preferred to wait until after January 1, 1946, to pass the acts of sale. We believe this to be true.
 

 The record further convinces us that a few days before Christmas plaintiff Peacock and his wife met Jesse Jones in a grocery store, and that Jones at that time thanked them for agreeing to wait until after January 1 to pass the acts of sale. Upon cross-examination Jones at first stated that he did not remember any such conversation and therefore could not say that the testimony of Mr. and Mrs. Peacock was incorrect or untrue. He then admitted that he might have met Peacock and his wife at the store because he was often there. He finally emphatically denied ever having had any such conversation with these parties.
 

 A few days after December 21, 1945, a check for the amount of the loan of each
 
 *201
 
 plaintiff was received by Theriot from W. B. Leedy & Company’s home office in Birmingham, Alabama. Thereafter all parties were notified by Mr. Smart’s secretary to be present at his office on January 8, 1946, at 2:00 o’clock in the afternoon for the purpose of executing the acts of sale. These acts of sale had been prepared and were then ready for execution, and checks representing the proceeds of the loans to pay the purchase price had arrived and were available. On this date both plaintiffs were present and prepared to accept title, but no representative of the defendant corporation appeared.
 

 On January 7, 1946, the preceding day, the defendant’s attorney had sent notices by registered mail to both plaintiffs at their homes that the defendant would not go through with the sales because the time granted for the passing of the acts of sale had elapsed, and that the defendant had made other arrangements to dispose of the property and intended to do so immediately. In each case the return receipt was signed by plaintiff’s wife as of January 8.
 

 We are convinced that Mr. Theriot, representative of W. B. Leedy & Company, Inc., and Mr. Smart were unknown to these plaintiffs at the time they exercised their options to purchase the properties on November 21, and, further, as stated above, that plaintiffs, who were entirely unfamiliar with the proceedings necessary to pass the acts of sale, relied entirely on the representations of Jesse Jones, and that it was Jones who referred them to W. B. Leedy & Company and who was present at the office of this company with them. According to the record, this company had handled previous business transactions for the defendant corporation and particularly had handled for defendant a mortgage on the properties which plaintiffs had leased and which they expected to purchase, and, further, George D. Smart himself had represented the defendant corporation in several other matters and was well known to it.
 

 We are further convinced that Jones was familiar with all details of these transactions from the time the applications for the loans were made to the time when the checks actually arrived, and that it was at the suggestion of Jesse Jones, who, according to the testimony of Melde, represented the defendant corporation in these transactions, that both acts be passed at the same time and after the first of the year.
 

 It is true that the checks for the amounts of the loan did not arrive in both cases prior to the first of the year, but we are of the opinion that no particular effort was made to close the transactions on or before December 21, plaintiffs being of the belief that the acts would not be passed until after the first of the year.
 

 These plaintiffs were lulled into inactivity and made no efforts to secure the funds elsewhere, relying on the good faith of the defendant, having been led to believe that the acts of sale would be passed after
 
 *202
 
 the first of the year, when the checks arrived. Certainly this defendant, whose agent had agreed to the delay and had suggested that the acts of sale be passed after January 1, cannot now take the position that, because of such delay, these plaintiffs have lost their rights under tha contracts to purchase. This being so, plaintiffs are entitled to specific performance of the cor tracts.
 

 Peacock, plaintiff in Suit No. 18717 on the docket of the Twenty-fourth Judicial District Court, entered into a contract on December 21, 1945, to sell the property which he expected to acquire from defendant, Oaklawn, Incorporated, together with certain movable property consisting of household furnishings, to a third party for the sum of $6,500, of which amount the movables were valued at $300 and the real estate at $6,200. Pursuant to this agreement the prospective purchaser had deposited with Peacock a down payment of $2,000 in cash, but, because of the refusal of the defendant to convey the! property to Peacock, he was unable to transfer title to this third party and had to return the $2,000 deposit. Plaintiff Peacock claims that he was thereby deprived of the profit of $1,250 which he expected to make on this transaction and is seeking damages in this amount.
 

 Plaintiff, however, overlooks the fact that, under tha contract with defendant, he was to pay $4,950 as the purchase price for the property, less a credit for rent paid, plus 5 per cent per annum interest for the actual number of months or days the dwelling had been occupied by him under the act of lease, and also to pay all state and parish taxes as well as any special assessment which might have been paid by tha lessor during said period of time, as well as to nay certain insurance which had been paid by the lessor, defendant herein.
 

 Since the record does not disclose the amounts of credits for rent paid by plaintiff or the amount of interest or the sums paid by defendant for taxes and insurance, it is by no means certain that his profit would have amounted to the sum of $1,250, and we are unable to ascertain what profit, if any, he would have made had the sale to the third party been consummated. In the present condition of the record, we think it to the best interest of justice to non-suit plaintiff Peacock as to his claim for damages.
 

 For the reasons assigned, the judgment of the lower court in each of these suits, Nos. 18716 and 18717 on the docket of the Twenty-fourth Judicial District Court, is reversed, and the defendant, Oaklawn, Incorporated, is ordered in each suit to execute an act of sale within 30 days after this judgment becomes final and make delivery to each plaintiff of the property specifically described in his petition, upon the payment by plaintiff of the purchase price of $4,950, less a credit on said purchase price for any and all sums paid by plaintiff to defendant as rent under the terms of the lease
 
 *203
 
 contract; all interest, taxes, and insurance to be adjusted pursuant to the terms of the contract as of the date of its termination, November 21, 1945; and, if defendant fails or refuses to accept the purchase price according to the terms of the agreement and to execute a deed to each plaintiff within the 30-day delay, it is then ordered that this decree shall stand as a deed translative of the properties, upon the deposit by each plaintiff in the registry of the court for the account of the defendant the amount due under said contract.
 

 It is also ordered that plaintiff Peacock’s claim for damages be dismissed as of non-suit.
 

 All costs are to be paid by the defendant.