LANDRY, Judge.
This is a suit for specific performance to enforce an option to purchase contained in a farm lease. After trial on the merits, the lower court rendered judgment in favor of plaintiff-lessee, Charles S. Jourdan, and against defendant-owner, Adrian H. Randall, ordering the latter to convey the subject property to the former in accordance with the contract between the parties. The trial court also rendered judgment in the sum of $120.00 in favor of defendant on his reconventional demand for the value of certain azaleas reserved to defendant under the terms of the agreement and sold by plaintiff. From the aforesaid judgment defendant-owner has appealed contending the trial court erred in ordering specific performance of the option to purchase.
By virtue of a written instrument (which appears to be undated), plaintiff entered into a lease agreement with defendant covering a 34 acre farm owned by defendant and situated in St. Tammany Parish. The contract was for a term of 10 years commencing April 24, 19S4, and stipulated it would continue in force and effect until April 24, 1964. The consideration for the lease was the agreed sum of $100.00 annually, payable in a lump sum of $1,000.00 cash, in advance. Included in the lease, inter alia, were certain renewal rights which do not concern the present litigation. Also included in the contract was a clause conferring the option to purchase which forms the basis of plaintiff’s present action and reads as follows:
“Said Adrian H. Randall agrees to sell to said Charles S. Jourdan this farm of 34 acres for the price of 3400.00 (sic) The rent paid to be part of the purchase price. If bought in 10 years from date said Adrian H. Randall agrees to pass title to Charles S. Jourdan at anytime 400.00 (sic) more cash is pd (sic) on purchase price, balance terms to be made. Said Adrian H. Randall reserves plot with azaleas for 1 year to remove same.”
Plaintiff’s position, succinctly stated, is that he exercised the foregoing option by registered letter addressed to defendant under date of February 18, 1964, advising defendant of plaintiff’s intention to avail himself of the purchase privilege contained in the lease. In this regard the letter, appearing in evidence, advised defendant that plaintiff would be present at his attorney’s office at 10:00 a. m., March 3, 1964, prepared to pay the balance of the agreed *471 purchase price and accept title to the property.
In essence, defendant’s answer alleges plaintiff’s breach of certain specific provisions of the lease resulting in a forfeiture of the purchase option therein contained. Alternatively, defendant pleads lesion beyond moiety alleging the sale price of $3,-400.00 was less than one-half the market value of the property.
The alternative defense of lesion beyond moiety has apparently been abandoned inasmuch as it is not mentioned in appellant’s brief and was not urged in oral argument before this court. In this regard we note in the record the unrefuted testimony of an expert witness produced by plaintiff to the effect subject property was worth only sixty dollars per acre at the time the lease with option to purchase was entered into between the parties.
Appellant’s defense of breach of contract terms is predicated upon the following provisions contained in the agreement:
“Should the premises be abandoned by Lessee or should Lessee begin to remove personal property to the detriment of Lessor’s lien, then the rent for the unexpired term with attorney’s fees, shall immediately become due, and Lessor, at his option may cancel the lease or reenter and let the premises * * * price or on such terms as may be immediately obtainable, and apply the net amount realized to the amount due by Lessee.”
‡ ^
“Neither Lessor nor Lessee shall make any additions or alterations to the premises without written permission of the other.
* * * * * *
“Lessee is not permitted to post any ‘For Rent’ signs, rent, sublet or grant use or possession of the leased premises without the written consent of Lessor and then only in accordance with this lease.” (Emphasis added.)
It is undisputed that shortly after assuming occupancy of the property following execution of the contract, plaintiff made certain alterations to the residence situated thereon. Plaintiff concedes he applied plywood over the celotex ceiling and also to the walls to improve the home and make it more livable for his wife and family. In addition, plaintiff re-wired the house for electricity, added a bathroom and installed an electric pump to the well, all without defendant’s permission. In early 1956, plaintiff admittedly removed some azaleas from a plot reserved by defendant, it being plaintiff’s contention he was told by defendant to take some of the plants for the purpose of beautifying the grounds adjacent to the residence. Plaintiff maintains within a year of the contract defendant had removed all of the better azaleas leaving only “culls”. He concedes, however, selling some of the plants which he estimated to be worth approximately $120.-00. Plaintiff also admits that for a period of two or three months he moved his family from the premises and that for approximately four years preceding expiration of the lease the farm was occupied by plaintiff’s brother. It appears that during the year 1961, plaintiff fenced a portion of the land, planted the area in bermuda grass and placed a small number of cattle thereon.
Defendant contends the admitted actions of plaintiff constitute an active breach of the hereinabove quoted provisions of the contract. Additionally, appellant maintains plaintiff further violated the agreement by removing a barn from the premises. In this connection, plaintiff testified that the barn was in a state of dilapidation when he took possession of the premises in that the roof and one wall had collapsed and that he made no use thereof during his entire occupancy. Plaintiff further testified he removed the debris after the barn collapsed completely. On this issue plaintiff’s evidence was corroborated by that of his wife and a neighbor.
*472 On July IS, 1963, defendant deliyered to plaintiff a written notice, the pertinent portion of which states:
"I am handing you these reasons for cancelling your lease and option to buy the farm.
In doing this is to confirm to you that on April 1955 I left a note with your wife telling you that you could live on the place but that I would not go through with sale to you because you tore down barn without written permission, sold all the old machinery and my azaleas on place without written permission.
* * * * * *
Later you left the place vacant without notifying me and without ins. (sic) and without permission.
* * * * * *
You let your brother live on the place without written permission. You let your brother and father make additions and improvements without written permission.”
It will he readily observed that defendant’s letter advising the purchase option was being cancelled because of the violations listed therein was delivered to plaintiff approximately six months prior to plaintiff’s formal notification of intent to purchase given defendant in writing on February 18, 1964. It is significant in this respect that, whereas the record does not reflect the precise date, plaintiff testified without refutation that he orally notified defendant of his intention to take advantage of the purchase clause contained in the lease, prior to July 15, 1963, by telephone from New Orleans, Louisiana. Plaintiff further testified without contradiction that, following this telephone conversation, he met with defendant at the farm on which occasion defendant offered plaintiff the sum of $500.00 cash and promised to convey plaintiff two acres of the property in return for plaintiff’s relinquishment of his purchase right under the contract.
After considering the evidence of record we are convinced that by mutual consent the litigants at bar waived the prohibitions against alterations, abandonment and use or occupancy of the premises by third parties from the inception of the lease. It is-clear beyond doubt that the violations now complained of by defendant commenced immediately following plaintiff’s occupancy to-the knowledge of defendant who made no objection thereto. Plaintiff frankly testified that upon moving into the residence-he at once set out to improve the house to make it more comfortable and livable.
Defendant while freely admitting knowledge of the violations, nevertheless maintains he forebore action to cancel because he felt an obligation to permit plaintiff’s occupancy for the ten year period considering plaintiff had paid the rent in advance. In effect defendant testified he deemed plaintiff’s action sufficient to forfeit the purchase option hut not the right, to ten year’s occupancy of the property. Be that as it may, it is certain that defendant took no formal action or made no complaint until after being verbally notified of plaintiff’s election to buy. Even more significant is the fact that after giving plaintiff notice on July 15, 1963, defendant took no further action whatsoever. We are convinced that from the time the violations commenced defendant had no intention to cancel the lease and by his silence,, acquiescence and failure to complain lulled' plaintiff into believing plaintiff’s actions-would in no way affect his right to purchase the property. We are of the further opinion that defendant did not elect to urge the violations in bar of plaintiff’s purchase rights until verbally notified that plaintiff had chosen to avail himself of the privilege to buy. At this time, defendant’s decision was too late; plaintiff’s right to purchase *473 had vested. Under such circumstances defendant is deemed to have waived his right to cancel the lease and is estopped to assert same in bar of plaintiff’s suit for specific performance. Davis v. Oaklawn, Inc., 212 La. 392, 31 So.2d 837.
Plaintiff does not dispute the amount due defendant on the reconditional demand. Accordingly, the judgment of the trial court is affirmed.
Affirmed.