563 So.2d 523 (1990)
Carolyn Creppel, Wife of/and Jimmy L. DRACHENBERG
v.
The PARISH OF JEFFERSON.
No. 90-CA-92.
Court of Appeal of Louisiana, Fifth Circuit.
June 6, 1990.
*524 Robert A. Pitre, Jr., Gretna, for plaintiff/appellee.
Lawrence J. Radosta, Asst. Parish Atty., Gretna, for defendant/appellant.
Before KLIEBERT, DUFRESNE and WICKER, JJ.
WICKER, Judge.
The Parish of Jefferson appeals a judgment ordering it to purchase property belonging to the plaintiffs, Carolyn Creppel, wife of/and Jimmy L. Drachenberg or alternatively enter into an act of exchange. We reverse.
The Drachenbergs owned twelve lots adjacent to Glisson Park in Crown Point which they had purchased from the Jefferson Parish School Board in 1982. They allegedly paid $38,000.00 for the property. The Parish had been interested in acquiring the property since November of 1983 to expand the park. Parish Councilman James Lawson approached them about selling this property to the Parish so that the park could be expanded. Since the Drachenbergs were agreeable, the Council arranged to have the property surveyed and appraised. The October 1, 1985, appraisal was for $168,000.00, based upon part commercial and part residential zoning. On June 4, 1986, the Parish Council by ordinance appropriated $75,000.00 of federal revenue sharing funds for the acquisition. The Drachenbergs executed an agreement on June 25, 1986, to sell six lots to the parish for $75,000.00. The Parish, however, did not have the money to buy all twelve lots at the same time, so the agreement to sell included an option on the other six. Then, on August 6, 1986, by resolution, the Council authorized the purchase of lots one through six for $75,000.00. The final agreement between the parties, as drafted by the Parish, was for the sale of lots one through six for $75,000.00, with an irrevocable offer in favor of the Parish to sell the remaining six lots. This sale and option was dated October 1, 1986.
The federal government withdrew the revenue sharing funds on which the Parish relied to purchase the second six lots, so it began to cast around for another source of funding. It found another federal program and, in order to satisfy the requirements of this program, had the remaining property reappraised. At this point the option had already expired, but the parties apparently orally agreed to extend it. A November 15, 1987, appraisal, which indicated the entire property was zoned general commercial, valued lots seven through twelve at $82,000.00. A review of that appraisal, dated December 22, 1987, valued the property at $36,000.00, noting lack of road access, two-family residential zoning, lack of utilities, and speculation about development. The Parish never exercised its option to purchase the second parcel, although Lawson testified that he introduced a resolution to purchase these lots.
Drachenberg testified that he believed Lawson and Larry Radosta, the Parish attorney, had made an agreement to buy the entire tract at $150,000.00, and he had borrowed money to acquire more real estate on the strength of the deal. He also believed the lack of road access to his remaining six lots was the fault of the Parish because it failed to improve two dedicated but unimproved streets and put a steel beam across one of these unimproved streets. However, he also noted the existence of large oak trees and a neighbor's fence blocking access.
The Drachenbergs sued the Parish for specific performance, damages for breach of contract, and/or reformation of the contract. The judge awarded the Drachenbergs specific performance against the Parish *525 on lots seven through twelve. He gave the Parish the option, instead of purchasing the remaining lots, of exchanging its previously-acquired lots one through six for lots seven through twelve. In his reasons he stated that he found there was a meeting of the minds for the sale of the entire twelve lots "because everyone shook on it." He felt the reasons the Parish didn't purchase the remaining property were "what some might deem technical problems but they're certainly real...." He concluded the Parish was estopped from asserting any deficiencies in the agreement and that "the contract in all equity should be adhered to...." Finally, he ruled "the remedy is to protect those less able to afford the remedy, that is the Drachenbergs."
The issues before us are whether or not, absent a Council resolution, Lawson had the authority to bind the Council; whether or not the alleged oral agreement between Lawson and the Drachenbergs to purchase and sell the entire twelve lots is effective; whether the Parish is equitably estopped from denying the existence of a binding agreement to purchase the remaining six lots; whether some action on the part of the Parish caused the decrease in value of the Drachenbergs' remaining property; and whether the act of sale can be reformed to require the Parish to swap lots one through six for lots seven through twelve. In short, was a binding agreement to purchase lots seven through twelve ever confected? We believe it was not.
An option is nothing more than an offer which does not become a contract until it has been accepted. Herring v. Pollock, 339 So.2d 510 (La.App. 2d Cir.1976). Only when an option has been accepted and become a contract may it be enforced by the party granting it. See Bankston v. Estate of Bankston, 401 So.2d 436 (La. App. 1st Cir.1981), writ denied 406 So.2d 627 (La.1981).
Sales and options to sell immovable property must be in writing. La.C.C. arts. 2440, 2462. The Supreme Court has held any acceptance of an option must also be written. Louisiana State Board of Education v. Lindsay, 227 La. 553, 79 So.2d 879 (1954), on rehearing (La.1955). See also Liuzza v. Panzer, 333 So.2d 689 (La. App. 4th Cir.1976). An exception to this rule is found in Briggs v. Siggio, 285 So.2d 324 (La.App. 3rd Cir.1973), writ denied 288 So.2d 641 (La.1974), where the court held that the vendor had waived the requirement of written notice to exercise the vendee's option. The Third Circuit ruled on remand that the alleged waiver of written notice had not been proved. On remand 313 So.2d 379 (La.App.1975), writ denied 318 So.2d 41 (La.1975).
Parol evidence cannot be used to prove the existence of an agreement that the parties did not reduce to writing. Louisiana State Board of Education v. Lindsay, supra; Fleming v. Romero, 342 So.2d 881 (La.App.3rd Cir.1977), writ denied 345 So.2d 50 (La.1977); Manuel v. Moity, 313 So.2d 278 (La.App. 3rd Cir.1975), writ denied 318 So.2d 48 (La.1975). Nevertheless, if the terms of a written contract involving real estate are ambiguous or if the intent of the parties is an issue, parol evidence can be used "to enforce the terms of such an agreement rather than invalidate or destroy the contract." Choctaw Home Builders, Inc. v. Lena, Inc., 223 So.2d 23, 28 (La.App. 1st Cir.1969), appeal after remand 246 So.2d 212 (La.App. 1st Cir.1971). Collins v. Brunet, 239 La. 402, 118 So.2d 454 (La.1960), cited by the Drachenbergs, only supports this result. It involved the use of parol evidence to support the written agreement not destroy it. This is unlike the instant case, where the Drachenbergs seek to prove by parol evidence an alleged oral agreement which is in conflict with the clear terms of the written agreement between them and the Parish.
We hold that the option to purchase granted by the Drachenbergs to the Parish never became an agreement to purchase lots seven through twelve. There was absolutely no evidence of the requisite written acceptance by the Parish of the option. The option agreement itself contained no ambiguity which would permit the receipt of parol evidence to vary its express terms, and there is no evidence of a waiver by any party of the requirement *526 of written notice to exercise the option. The finding by the judge that the parties shook hands on this deal, even if true, is not sufficient in law to support an enforceable contract to purchase immovable property. La.C.C. arts. 2440, 2462.
Nevertheless, the Parish might be bound if any actions on its part would equitably estop it from denying the existence of an enforceable agreement to purchase the Drachenbergs' second parcel of land. Jones v. Hospital Corp. of America, 516 So.2d 1175 (La.App. 2d Cir.1987). However, Louisiana jurisprudence specifically holds that an unwritten contract to sell immovable property cannot be proven by estoppel. Jones v. Hospital Corp. of America, supra. The Second Circuit's more recent case, Pittman v. Pomeroy, 552 So.2d 983 (La.App.1989), is a limited holding on different facts involving a waiver of the writing requirement. We hold that the unwritten acceptance of an option to purchase, like an unwritten agreement to sell, also cannot be proved by estoppel. The cases on equitable estoppel cited by the parties are inapposite since none of them involve contracts to purchase or sell immovable property.
We also note that, whatever his intentions and oral agreement with the Drachenbergs, Lawson did not have the authority to bind the entire Parish Council. La.R.S. 33:1236(20) and 4621 grant the Parish the authority to acquire immovable property and establish parks. Its Charter requires in Section 2.07 that any such act be by Parish ordinance. In Starnes v. Police Jury of Rapides Parish, 27 So.2d 134 (La.App. 2d Cir.1946), the appellate court held that an individual police juror cannot bind the entire police jury without some action by the police jury itself. Accord: Guillory v. Calcasieu Parish Police Jury, 410 So.2d 1213 (La.App. 3rd Cir.1982). The action here of the Parish Council as a whole, as expressed in its ordinance and resolution, is at variance with the alleged action of Lawson.
We find, in addition, that there was insufficient evidence to support a reformation of the action of sale and option to require the Parish to exchange lots one through six for seven through twelve. Reformation of a contract is only available where there is mutual error as to the intent of the parties. Agurs v. Holt, 232 La. 1026, 95 So.2d 644 (1957); La. Paving v. State through Dept. of Transp. & Dev., 431 So.2d 52 (La.App. 1st Cir.1983), writ denied 440 So.2d 735 (La.1983). Such error must be proved by clear and convincing evidence. La. Paving v. State through Dept. of Transp. & Dev., supra. The Drachenbergs, who had the burden of proving mutual error, presented no evidence that the written contract did not reflect the intentions of the Parish.
While we sympathize with the Drachenbergs that they now own six lots which may be worth less than their 1985 appraisal, we do not believe that the Parish is the cause of that alleged diminution in value. The last appraisal noted that the value of the lots was depressed by lack of access, but it also noted residential zoning, the lack of utilities, and speculative projections of development in a prior appraisal as factors in the difference between earlier appraisals and the present appraised value of $38,000.00. Obviously, none of these latter factors is attributable to the Parish. Nor is there any evidence that the Parish is at fault in causing the Drachenbergs' lots seven through twelve to be landlocked. The Drachenbergs must have been aware that, in selling lots one through six, they were cutting off access to lots seven through twelve.
We reverse the judgment of the trial court requiring specific performance or, alternatively, a reformation of the contract. Carolyn Creppel, wife of/and Jimmy L. Drachenberg must pay the cost of this appeal.
REVERSED