809 So.2d 1140 (2002)
James M. HUGER
v.
James J. MORRISON, Jr.
No. 2001-CA-1864.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 2002.
*1141 James R. Swanson, Loretta G. Mince, Joseph C. Peiffer, Correro Fishman Haygood Phelps Walmsley & Casteix, L.L.P., New Orleans, LA, for Plaintiff/Appellant.
James J. Morrison, Jr., Jacque Touzet, New Orleans, LA, for Defendant/Appellee.
Court composed of Judge STEVEN R. PLOTKIN, Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY.
Judge MICHAEL E. KIRBY.
Plaintiff appeals the trial court's dismissal of his petition, responsive to defendant's peremptory exception of no cause of action, as well as the court's subsequent denial of his motion for new trial. After reviewing the record, we reverse the trial court and remand with leave for plaintiff to amend his petition.
Plaintiff, James M. Huger, and defendant, James J. Morrison, Jr., entered into a purchase/sale agreement regarding property owned at the time by the University of New Orleans ("UNO"). Plaintiff is the former owner of Dixie Parking and is actively involved in commercial real estate development in the City. According to plaintiff's petition, defendant and UNO entered into an Option to Purchase contract on May 11, 1999 whereby UNO granted defendant an option to purchase the property located at Lee Circle, Calliope and Camp Streets to construct a multi-level parking garage. The option agreement between defendant and UNO allegedly obligated UNO to lease from defendant a certain number of parking spaces within the new garage for a period of twenty (20) years.[1]
According to plaintiff, defendant approached him in December 2000 and offered to sell him the property under the terms and conditions specified by UNO in the option agreement. Plaintiff and defendant entered into the purchase/sale contract on January 5, 2001 with the following conditions: (1) defendant would acquire the property from UNO on or before the closing date of the contract, and (2) UNO's parking lease with defendant had to be finalized and then assigned to plaintiff as a condition of closing the contemplated transaction. The closing date for the purchase/sale contract was specified in the agreement as on or before March 12, 2001 as follows:
Time being of the essence, the Act of Sale (the "Closing") at expense of Purchaser, is to be passed before Purchaser's Notary Public, the date, time and place are to be mutually agreed upon by both parties and will take place in the New Orleans area, on or before March 12, 2001 (the "Closing Date").
According to plaintiff's petition, defendant failed to acquire title to the subject property from UNO by March 12, 2001. Plaintiff alleges that he and Morrison continued to move toward the closing of the sale even after the scheduled closing date of March 12, 2001. Defendant subsequently repudiated the purchase/sale agreement with plaintiff, citing plaintiff's failure to close on March 12, 2001 as a fatal blow to the deal.
After several futile attempts to obtain defendant's performance, plaintiff filed suit on June 12, 2001 to enforce defendant's specific performance of the purchase/sale agreement.[2] Plaintiff attached to his petition two exhibits: 1) the January 5, 2001 Agreement to Purchase or Sell between him and defendant, and 2) a May 2, 2001 letter from defendant stating to plaintiff *1142 his position that plaintiff's failure to close the deal by March 12, 2001 voided their agreement.
Defendant filed his peremptory exceptions of no cause of action, and alternatively, no right of action on July 12, 2001. On July 24, 2001, plaintiff filed a first amended petition in which he alleged that the parties, by their words and actions, before and after March 12, 2001, renounced the provision in the purchase agreement requiring a closing on or before March 12, 2001, but that this renunciation did not affect the parties' remaining obligations under the agreement. On July 25, 2001, defendant filed an answer and reconventional demand for retention of plaintiff's $50,000.00 deposit and attorney's fees.
The matter was argued on July 27, 2001 and the judge ruled from the bench, dismissing plaintiff's petition at his cost and erasing the Notice of Lis Pendens that plaintiff had filed. No reasons for judgment were given. Plaintiff filed a motion for new trial on August 6, 2001, which motion was denied on August 8, 2001.
Appellant asserts several arguments in support of his position that the dismissal was erroneous. First, he argues that parties can waive a contractual term by their words and conduct; thus, defendant's conduct in continuing to work toward finalizing the prerequisites of the purchase/sell contract constituted a waiver of the closing date.
Second, appellant contends that even if defendant's conduct is not construed as waiving the closing date of March 12, 2001, he is entitled to specific performance because there were reciprocal obligations in the contract and defendant failed to accomplish his obligations by March 12, 2001, whereas plaintiff could have gone forward on the scheduled date because his only obligation was to pay the purchase price, which he was willing and able to do by or on March 12, 2001. The obligations set forth for each party in the contract were the following. The defendant was required to: (1) acquire the property from UNO; (2) obtain UNO's written approval of the parking lease; and (3) execute and deliver to plaintiff the Act of Sale, the assigned lease, and other closing documents on or before March 12, 2001. Reciprocally, plaintiff was required to pay $1,730,000.00 at the Act of Sale.
As to the first argument concerning conduct serving to waive contractual terms in lieu of a written waiver, plaintiff cites Lamar v. Young, 211 La. 837, 30 So.2d 853 (La.1947). The court reversed the lower court's order for specific performance due to a lack of evidence that defendant had led plaintiff to believe, as asserted, that the time period in the contract had been abrogated; but, the court left the door open for future showings in specific performance cases where "conduct, acts, and words" could lead plaintiff's to believe that the deadline had been waived. The court stated:
The act of sale was not passed before plaintiff's notary within the 30-day period, according to the plain terms of the contract. This being so, did the defendants, by their conduct, acts, and words lead plaintiff to believe that the time limit specified in the agreement had been abrogated and was no longer of importance, and are they now estopped thereby to deny that the time limit had been waived?
Id. at 857. See also Rogers v. Horseshoe Entertainment, 32,800 (La.App. 2 Cir. 8/1/00), 766 So.2d 595, writ denied, 2000-2894, 2000-2905 (La.12/8/00), 776 So.2d 463, 464, where the court stated: "Waiver occurs when there is a knowledge of the existence of the right, coupled with either an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable *1143 belief that it has been relinquished." Id. at 601 (emphasis added). Plaintiff cites various other cases in further support of his contention that defendant's actions indicated that he intended to go forward with the closing even though the March 12, 2001 deadline had passed. See Pittman v. Pomeroy, 552 So.2d 983, 989 (La.App. 2 Cir.1989) ("Here, [the plaintiff] was lulled into believing, by the words and actions of [the defendant], that she could exercise the option to repurchase her home without the necessity of a writing. Whether couched in terms of LSA-C.C. Art. 1772 or in the terms of estoppel, we conclude that [the defendants] cannot, under the very limited facts presented in the instant case, defend this suit for specific performance based on [the plaintiff's] failure to exercise the purchase option in writing."); Davis v. Oaklawn, Inc., 212 La. 392, 31 So.2d 837, 840 (La.1947) ("These plaintiff's were lulled into inactivity ... relying on the good faith of the defendant, having been led to believe that the acts of sale would be passed after the first of the year.... Certainly this defendant ... cannot now take the position that, because of such delay, these plaintiff's have lost their rights under the contracts to purchase. This being so, plaintiff's are entitled to specific performance of the contracts."); Briggs v. Siggio, 285 So.2d 324, 327 (La. App. 3 Cir.1973); Drachenberg v. Parish of Jefferson, 563 So.2d 523, 525 (La.App. 5 Cir.1990) (recognizing that waiver is an exception to the general rule that sales of immovable property must be in writing); La. C.C. art. 1772 ("A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment.").
Plaintiff cites case law to support his contention that a contract to sell is not rendered unenforceable merely because the parties fail to close on the date specified in the contract. For example, the court in Hammond Asphalt Co., Inc. v. Ponder, 303 So.2d 851 (La.App. 1 Cir. 1974), affirmed the lower court's order of specific performance regarding sale of immovable property, and explained:
[t]he specified date for passage of the sale was not a condition precedent to passage, but rather constituted a term to which the parties mutually agreed. If the sale were not passed by the time stated, either or both parties would have been in violation of the contract.
Id. at 854. The court in Ponder weighed the fault of the vendor and concluded:
Under the circumstances, it would have been a vain and useless gesture for Purchaser to have appeared for confection of the sale on January 15, 1972, and tender the remaining down payment portion of the purchase price. Vendor was aware of the unmerchantability of his title, and equally aware of his inability to cure the defect by the promised date.
Id. Additionally, plaintiff cites the following case in further support of his contention that the mere missing of a specified deadline does not render the contract unenforceable. See, e.g., Muirfield (Delaware), L.P. v. Pitts, Inc., 17 F.Supp.2d 600, 607 (W.D.La.1998) (quoting Ponder and rejecting argument that the parties' failure to close by the specified date excused all performance and made the agreement unenforceable).
Finally, plaintiff argues that because the time deadline for closing constituted a benefit for both parties, either could renounce the deadline. He argues that both parties tacitly renounced the March 12th deadline because there were still aspects of the deal that were in the process of being finalized on that date, yet plans were still underway to go forward with the purchase/sale of the property. Plaintiff cites case law in support of his argument that he is entitled to specific performance unless it can be *1144 proved that he alone was responsible for the failure to close the deal. See Deleon v. WSIS, Inc., 31,602 (La.App. 2 Cir. 2/26/99), 728 So.2d 1046, where the court summarized the jurisprudence relative to this issue as follows:
In deciding whether to grant specific performance on contracts to sell, the courts have focused on which party was responsible for delays when the closing failed to occur on a specified date. The cases generally have held that a party who causes the delay may not demand specific performance.

[The court reviewed and summarized five cases granting specific performance to the party who was not responsible for the delay.]
Because we find that the plaintiff's did not fail to fulfill any obligations under the contract to sell, did not cause the delay in closing the sale and were ready to perform on June 20, 1996, the specified closing date, we find no reason to deprive the plaintiff's of specific performance. We reverse the trial court judgment to the contrary.
Id. at 1050-51 (emphasis added).
Plaintiff-appellant asserts that, in fact, it was defendant, not plaintiff, who was responsible for the failure to close the deal on March 12th. Therefore, because plaintiff was ready and willing to close on the specified date, but was waiting for the lease drafting and the other requisite conditions to be fulfilled by defendant before they could close the deal, plaintiff is entitled to specific performance of the contract.
Appellee asserts that most of the facts argued in brief by appellant are not properly before this court because they were not raised adequately below. Additionally, appellee contends that this is a simple issue of plaintiff not timely closing on the deal. According to defendant-appellee, plaintiff should have made an offer to close the deal on the specified date of March 12, 2001 and his failure to do so renders the contract unenforceable.
The jurisprudence cited by plaintiff provides more than enough support for a reversal of the trial court's grant of defendant's exception of no cause of action. When faced with review of a no cause of action judgment, this court must conduct a de novo review to decide whether plaintiff could prove a set of facts in support of his claim, which, if proved, would entitle him to relief. City of New Orleans v. Board of Comm'rs, 93-0690 (La.7/5/94), 640 So.2d 237, 253. All factual allegations in the petition must be presumed true and all reasonable inferences must be made in favor of maintaining the sufficiency of the petition. Id.
The Louisiana Supreme Court stated in the above case:
As a practical matter, an exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insuperable bar to relief.
Id.
Accordingly, we find that the plaintiff has stated a cause of action because he has properly alleged that the written purchase agreement was amended by the actions and consent of the parties. We therefore reverse the trial court judgment granting the exception of no cause of action. This case is remanded for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] The option agreement between defendant and UNO is not in the record.
[2] Plaintiff claims that defendant has indicated that he will exercise his option to purchase the property from UNO, and then not sell the property to plaintiff.