TERRI F. LOVE, Judge.
11 This appeal arises from a dispute concerning the ownership of immovable property in Algiers Point. The plaintiffs filed for specific performance ordering the defendant to convey title to the property after they paid off the mortgage and completed the requirements of a bond for deed contract. The defendant alleged the contract was no longer valid. The trial court ordered the defendant to convey title to the property to the plaintiffs and the defendant appealed. We find that the trial court did not err by ordering specific performance and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Lloyd (“Mr. Cottingim”) and Laura Cot-tingim (“Mrs. Cottingim”) (collectively “Cottingims”) entered into a contract to sell with Sarah Chenault Vliet (“Mrs. Vliet”) on August 28, 1990, in order to purchase 1027 Delaronde Street (“Property”). Subsequently, they entered into a lease for the property on September 15, 1990, until the Cottingims could acquire financing.[1] When the Cottingims were unable to obtain the proper financing, they entered into a bond for deed contract (“Contract”) with Ms. Vliet, on January 15, 1991, in order to purchase the Property. The Contract stated that the Cottingims paid $2,000 as a down payment and would obtain financing to pay off the $55,000 mortgage by ^February 1, 1993. The Contract also included a one-year extension, requiring financing by February 1, 1994.
The Cottingims were unable to obtain financing for several reasons, but remained on the Property, made extensive repairs, and paid off the mortgage in March 2005. The Cottingims then found a purchaser willing to pay $190,000 for the Property and scheduled a closing. However, Ms. Vliet did not attend the closing and refused to convey title to the Property to the Cottingims. Subsequently, Ms. Vliet offered to convey title in exchange for ten percent of the current market value of the Property.
The Cottingims filed a petition seeking specific performance in order to compel Ms. Vliet to convey title to the Property. Ms. Vliet filed an exception of no cause of action, which the trial court denied. Both parties filed motions for summary judgment, which were denied. During the one-day bench trial, Carol Newman (“Ms. Newman”), the Cottingims’ attorney, believed that Ms. Vliet would testify. Miles Trapolin (“Mr. Trapolin”), Ms. Vliet’s attorney, rested without calling her to the stand and Ms. Newman objected. The trial court ordered the parties to submit post-trial memoranda. The Cottingims also filed a motion to supplement the record with Ms. Vliet’s deposition. The trial court denied the motion to supplement the record with the deposition, but permitted the proffer of Ms. Vliet’s deposition. The *28 trial court then granted the Cottingims’ petition for specific performance. Ms. Vliet’s suspensive appeal followed.
Ms. Vliet asserts that: 1) the record does not reflect that she agreed to extend the contract; 2) the Cottingims breached the contract when they did not obtain financing by February 1, 1994; 3) the trial court erred by finding equity; and 4) the | strial court erred because Ms. Vliet was not required to give the Cottingims notice of termination of the contract. The Cot-tingims filed an answer to the appeal asserting that: 1) they are entitled to compensatory damages, as well as specific performance; 2) they are entitled to an increase in the surety bond; 3) they are entitled to attorney’s fees and court costs; and 4) Ms. Vliet’s appeal is sanctionably frivolous.

MOTION FOR SANCTIONS

After oral argument, Mr. Trapolin filed a motion for sanctions/reprimand against Ms. Newman alleging that she violated the Code of Professionalism when she stated in oral argument that she did not call Ms. Vliet to the stand on cross because she believed Mr. Trapolin was going to call Ms. Vliet to testify at trial. “Am appellate courts’ authority to regulate conduct before it is governed by Louisiana Code of Civil Procedure Article 2164 which provides, in pertinent part, the court may award damages for frivolous appeal.” Cantuba v. Am. Bureau of Shipping, 08-0497, p. 7 (La.App. 4 Cir. 6/3/09), 2009 WL 1564474, *7, — So.3d -, -. Accordingly, we deny the motion for sanctions.

COTTINGIMS’ ANSWER TO APPEAL

An answer to an appeal must be filed “not later than fifteen days after the return day or the lodging of the record whichever is later.” La. C.C.P. art. 2133.
The return day of the appeal shall be thirty days from the date estimated costs are paid if there is no testimony to be transcribed and lodged with the record and forty-five days from the date such costs are paid if there is testimony to be transcribed, unless the trial judge fixes a lesser period. The trial court may grant only one extension of the return day and such extension shall not be more than thirty days. A copy of the extension shall be filed with the appellate court. Subsequent extensions of the return day may be granted by the appellate court for sufficient cause or at the request of the court reporter as provided in Article 2127.2.
|4La. C.C.P. art. 2125. The Cottingims filed an answer to Ms. Vliet’s appeal on February 13, 2009. Ms. Vliet’s appeal was granted on July 15, 2008, costs were paid on July 22, 2008, and the appeal was lodged on October 9, 2008. The record does not indicate that an extension of the return date was granted. Accordingly, it is clear from the record that the Cottingims’ answer was untimely and cannot be considered by this Court. See Hand v. City of New Orleans, 04-0845, p. 5 (La.App. 4 Cir. 12/22/04), 892 So.2d 609, 612.

STANDARD OF REVIEW

Appellate courts review factual determinations made by the trial court using the manifest error or clearly wrong standard. Fairway Estates Homeowners Ass’n, Inc. v. Jordan, 08-0949, p. 2 (La.App. 4 Cir. 5/20/09), 15 So.3d 1011, 1013. “When the factual findings are based on the credibility of witness’s testimony, the appellate court must give great deference to the fact finder’s decision to credit a witness’s testimony.” Watters v. Dep’t of Social Servs., 08-0997, p. 8 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128, 1142. Even if an appellate court feels “its own evaluations and infer- *29 enees are more reasonable than the fact-finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.” Cormier v. Comeaux, 98-2378, p. 5 (La.7/7/99), 748 So.2d 1123, 1127. Therefore, “[i]f a review of the entire record demonstrates that the trial court’s factual findings were reasonable, the appellate court must affirm.” Pitts v. Louisiana Citizens Prop. Ins. Corp., 08-1024, p. 3 (La.App. 4 Cir. 1/7/09), 4 So.3d 107, 108-09.
If the trial court reaches its decision based upon questions of law, the appellate court must review the record using the de novo standard of review. Green v. Auto Club Group Ins. Co., 07-1468, p. 2 (La.App. 4 Cir. 10/1/08), 994 So.2d 701, 703.

BOND FOR DEED

“A transfer of immovable property must be made by authentic act or by act under private signature.” La. C.C. art. 1839. “A sale or promise of sale of an immovable must be made by authentic act or by act under private signature, except as provided in Article 1839.” La. C.C. art. 2440. This is to “prevent misunderstandings over verbal terms.” Rebman v. Reed, 335 So.2d 37, 42 (La.App. 4th Cir.1976).
“A bond for deed is a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer.” La. R.S. 9:2941. If the purchaser fails to comply with the bond for deed contract, Louisiana requires notice of cancellation be given as follows:
If the buyer under a bond for deed contract shall fail to make the payments in accordance with its terms and conditions, the seller, at his option, may have the bond for deed cancelled by proper registry in the conveyance records, provided he has first caused the escrow agent to serve notice upon the buyer, by registered or certified mail, return receipt requested, at his last known address, that unless payment is made as provided in the bond for deed within forty-five days from the mailing date of the notice, the bond for deed shall be cancelled.
La. R.S. 9:2945(A). The notice requirement is “clear and mandatory.” Upton v. Whitehead, 42,314, p. 5 (La.App. 2 Cir. 8/15/07), 962 So.2d 1168, 1171, quoting Thomas v. King, 35,857, p. 7 (La.App. 2 Cir. 4/3/02), 813 So.2d 1227, 1231, quoting Williams v. Dixie Land Co., 231 La. 834, 93 So.2d 185, 186 (1956).
Contracts are “the law between the parties and must be performed in good faith.” Prime Income Asset Mgmt., Inc., 07-1380, p. 7 (La.App. 3 Cir. 4/30/08), 981 So.2d 897, 902. Considering only the requirement of the Louisiana Civil Code that an agreement to transfer immovable property must be in writing, the trial court erred. However, our analysis continues because the requirement of a writing “may be waived in certain circumstances based on the individual facts of the case.” Rogers v. Horseshoe Entm’t, 32,800, p. 7 (La.App. 2 Cir. 8/1/00), 766 So.2d 595, 601. “A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment.” La. C.C. art. 1772. Additionally, a “[wjaiver occurs when there is a knowledge of the existence of the right, coupled with either an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that is has been relinquished.” Rogers, 32,800, p. 7, 766 So.2d at 601. As such, Louisiana jurisprudence has held that in *30 instances where a party has been lulled into inaction based upon representations or actions by the opposing party, that contracts with verbal amendments, regarding immovable property are valid and enforceable. See Davis v. Oaklawn, 212 La. 392, 31 So.2d 837 (1947); Bandel v. Sabine Lumber Co., 194 La. 31, 193 So. 359 (1939); Pittman v. Pomeroy, 552 So.2d 983 (La.App. 2nd Cir.1989); Briggs v. Siggio, 285 So.2d 324 (La.App. 3rd Cir.1973); Huger v. Morrison, 01-1864 (La.App. 4 Cir. 2/6/02), 809 So.2d 1140.
The Louisiana Supreme Court, in Ban-del, upheld a trial court’s order of specific performance regarding a bond for deed contract when the purchaser/plaintiff failed to pay the last two notes as designated in the contract, but alleged an extension. 193 So. at 361. The plaintiff “apprised the defendant’s real estate agent of his inability ... as he had been unable to profitably sell his cattle.” Id. The plaintiff subsequently paid the notes “without objection” and demanded that the title be conveyed. Id. The Court held that the “defendant cannot retain | ./plaintiff’s money, even though paid tardily, and refuse to transfer the lands.” Id.
In Davis, the plaintiffs exercised their option to purchase property and the written acknowledgements of the options, con-fected by the president of the owner corporation, stipulated a specific date by which the acts of sale must be passed. 31 So.2d at 838. Both plaintiffs needed to obtain loans prior to closing on the property, but were informed that they would be unable to close by the required date. Davis, 31 So.2d at 839. An agent for the corporation told the plaintiffs’ attorney that an extension would be granted, that a writing to evidence same was unnecessary, and that the acts of sale could be passed after the first of the year. Id. After the first of the year, the defendant informed the plaintiffs that it would not complete the sales because “the time granted for the passing of the acts of sale had elapsed.” Id. The Court held that “[t]hese plaintiffs were lulled into inactivity and made no efforts to secure the funds elsewhere, relying on the good faith of the defendant, having been led to believe that the acts of sale would be passed after the first of the year, when the checks arrived.” Davis, 31 So.2d at 840. Further, the Court stated that the defendant could not take advantage of the delay after its agent agreed to the time extension. Id.
Further, the Third Circuit examined specific performance where the plaintiff signed a written agreement granting him three options to purchase property. Briggs, 285 So.2d at 325-26. The first option was exercised verbally, the second in writing, and the third verbally. Id. at 326. The defendant agreed to order the abstract of title and remove “certain improvements and level an irrigation ditch.” Id. Relying on this, the plaintiff did not reduce the exercise of his option to writing. Id. The defendant then refused to complete the sale because the option had not been confected in writing. Id. The court found that “[u]nder these ^allegations, evidence could be introduced to show it was through the fault of defendants that the option was not exercised in writing” and remanded the matter to the trial court for further proceedings.” Id. at 327. The court reasoned that “no man can take advantage of his own wrong.” Id.
Additionally, the Second Circuit, in Pittman, scrutinized a plaintiff that executed a one-year lease with an option to purchase that telephoned one of the defendants to exercise the option towards the end of the lease. 552 So.2d at 984-85. The defendant’s husband took the plaintiff’s message and when the plaintiff did not hear from *31 the defendants, she telephoned again to advise them that she was in possession of a cashier’s check to exercise the option to purchase. Id. at 985. The court found that although writings are required when dealing with the sale of immovables, the plaintiff was “lulled into believing, by words and actions of the Pomeroys, that she could exercise the option to repurchase her home without the necessity of a writing.” Id. at 989.
Finally, this Court opined similarly in Huger, where the plaintiff entered into a purchase/sale contract for immovable property with the defendant. 01-1864, pp. 1-2, 809 So.2d at 1141. The defendant failed to convey title to the plaintiff after the closing date contained in the contract passed. Id., 01-1864, p. 2, 809 So.2d at 1141. The plaintiff alleged that the parties verbally renounced the contractual provision requiring a closing by the included date. Id., 01-1864, p. 3, 809 So.2d at 1142. In reversing the granting of an exception of no cause of action, this Court stated that the written agreement could have been “amended by the actions and consent of the parties” and remanded the matter for further proceedings. Id., 01-1864, p. 8, 809 So.2d at 1144.
In the case sub judice, the Cottin-gims entered into a bond for deed contract |non January 15, 1991, which stated that they would obtain financing to pay off the mortgage on the Property by February 1, 1993. The Contract also included an extension of one year, which permitted the Cottingims to obtain financing by February 1, 1994. The record also reflects that Mr. Trapolin, Sr., the original attorney for Ms. Vliet until his death, sent a letter to the Cottingims on June 29,1995, indicating that an extension had apparently been granted until February 1, 1995. Mr. Tra-polin, Sr. wrote: “the sale should have taken place by February 1, 1995.” This connotes that an extension must have been in place between February 1, 1994, and February 1, 1995. Additionally, as the record does not include evidence that this extension was recorded in a written document, the extension could have been verbal.
Mrs. Cottingim testified that they were unable to obtain financing, as outlined in the Contract, due to the condition of the Property, serious blight in the neighborhood, and her husband’s credit. However, she stated that Ms. Vliet never opposed an extension to the Contract. Mrs. Cottingim testified that they performed extensive renovations on the Property, including, but not limited to, constructing two porches, replacing the roof and air conditioning, remodeling the kitchen, and replacing walls. Further, Mrs. Cottingim stated that after a hailstorm in 2000, they were issued an insurance check to help replace the roof and that Ms. Vliet’s signature was required in order to release the check. Mrs. Cottingim testified that she believed an extension was granted and that this belief was cemented when she received the new mortgage payment book in October 1995. Further, she stated that she thought Ivor Trapolin (“Mr. Trapolin, Sr.”), Ms. Vliet’s attorney handling this matter until his death, had worked something out. She did not feel it was incumbent upon her to obtain a written extension under the circumstances.
| 10Mr. Cottingim’s deposition was entered into the trial court record because he died prior to the trial.[2] Mr. Cottingim stated in his deposition that he did not *32 understand the Contract and that he thought he was “taking over the payments so it would be his when payments were done.” He thought the Contract could be extended. Mr. Cottingim testified that he did not understand that the mortgage had to be paid off by February 1993 because Mr. Trapolin, Sr. said that he could extend the Contract. Further, Mr. Cottingim stated that he did not believe he could stay on the Property without an extension. He believed an extension was granted due to his conversations with Mr. Trapolin, Sr. and because no one told him to leave. Mr. Cottingim also stated that the last letter he received from Mr. Trapolin, Sr. was an extension agreement. When he received the new mortgage payment book after Mr. Trapolin, Sr. died, he thought the extension was granted. Finally, Mr. Cottingim stated that he never received any evictions notices or default letters from Ms. Vliet.
A dispute with the mortgage company arose in 2003, regarding the timeliness of the Cottingims’ payments, following a change in the Cottingims’ escrow services company. The Cottingims hired attorney Christopher Edwards (“Mr. Edwards”) to resolve the issue. Mr. Edwards testified at trial that he needed Ms. Vliet’s assistance in resolving the dispute because her name remained on the mortgage. Ms. Vliet granted Mr. Edwards permission to speak with the mortgage company and indicated that she would do whatever was needed to help resolve the problem. Mr. Edwards stated that Ms. Vliet never said she had any problems with the Cottingims regarding the Contract.
After the Cottingims paid off Ms. Vliet’s mortgage in March 2005, Stewart Title scheduled a closing because the Cottingims planned to sell the Property and Inretire to Florida. Ms. Vliet did not attend the closing, but offered to transfer title to the Property to the Cottingims for ten percent of the current market value.
The record reflects that Ms. Vliet permitted the Cottingims to remain living on and remodeling the Property, as well as paying the mortgage, for over eleven years after she alleges the Contract expired. The Cottingims remained in contact with Mr. Trapolin, Sr. regarding an extension. In fact, one letter from Mr. Trapolin, Sr. connotes that an extension was granted from February 1, 1994 to February 1, 1995. While Mr. Cottingim and Mr. Tra-polin, Sr. were corresponding regarding a latter extension, Mr. Trapolin, Sr. apparently died. Mr. Cottingim testified that when he received the new mortgage payment book in October 1995, he thought Mr. Trapolin, Sr. worked out an extension. Mrs. Cottingim also testified that she believed an extension was granted when they received the new mortgage payment book. Their beliefs were reinforced by the fact that neither Ms. Vliet nor Mr. Trapolin told them to vacate the Property in order for Ms. Vliet to retake possession. Further, Ms. Vliet complied with signing the insurance check in 2000 and by cooperating with Mr. Edwards in resolving the mortgage problems for the Cottingims in 2003.
The trial court weighed the testimony and examined the evidence submitted by both parties. The trial court stated that “[i]t is absurd to think that the plaintiffs would have continued to both pay off Mrs. Vliet’s mortgage AND make the substantial repairs to ‘Mrs. Vliet’s’ property without the genuine belief and assurance from Mrs. Vliet that the title would be passed to them at the appropriate time.” The trial court took further notice of the fact that Ms. Vliet “took no action to ‘protect’ her alleged interest in the property until AFTER plaintiffs attempted to get her to transfer property in their name.” Given *33 the facts from the record and 11 ¿jurisprudence that verbal amendments to contracts regarding the purchase of immovable property can be enforceable if the seller “lulled the plaintiff’ into inaction, we find that the trial court did not commit manifest error and affirm.

DECREE

For the above mentioned reasons, we find that the trial court did not err and affirm the granting of specific performance.
AFFIRMED.
ARMSTRONG, C.J., Concurs in the Result.

. The record indicates that the lease ended on December 31, 1990.

. The trial court overruled Mr. Trapolin’s objections to the testimony with the exception of two pages.